George A. Vail, John J. Lapham, Lewis H. Lapham and Samantha V. Lapham, Copartners as H. G. Lapham & Co., and The Elk Tanning Company, a Corporation, *v.* Robert C. Osburn, J. Van Reed and Solomon Shaffer, Appellants.

*Equity—Jurisdiction—Specific performance.*

A contract to cut and deliver bark to the owners of a tannery from trees in proximity to the tannery may be specifically enforced by a court of equity, when it appears that the supply of bark in the vicinity is limited, and loss of the bark specified in the contract would cause irreparable loss to the tannery.

*Equity—Service of process—Act of April 6, 1859, sec. 1, P. L. 387.*

Where a court of equity has jurisdiction of the subject-matter of a contract, but some of the defendants, nonresidents of the county, have not been regularly served with process, on account of the order of court not following the requirements of the act of April 6, 1859, the defect in the order may be corrected after a preliminary injunction has been granted and continued, and an answer filed.

*Equity—Preliminary injunction—Specific performance.*

On a bill for the specific performance of a contract to sell bark to the owners of a tannery, the bill charged that the defendants had refused to carry out the contract. The court granted a preliminary injunction to restrain the defendants from selling and delivering bark to other parties, and this injunction was subsequently continued. After the date of the order continuing the injunction, a third party who claimed that the defendants had sold the bark to him, intervened in the case. *Held*, that the decree continuing the injunction should be affirmed.

Argued Feb. 6, 1896. Appeal, No. 15, Jan. T., 1896, by defendants, from decree of C. P. Cameron Co., Sept. T., 1895, No. 32, continuing preliminary injunction. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and FELL, JJ. Affirmed.

Bill in equity for specific performance.

The bill alleged that on January 8, 1890, Charles Brown, Jerry Brown, C. E. Hoyt and Martin Lantz agreed with H. G. Lapham & Co., who were then the owners of the Sterling Run Tannery in Cameron Co., Pa. to cut, peel, haul and deliver at said tannery at their own expense and charge all the hemlock bark from certain lands owned by the first parties in the vicinity of said tannery; 1000 tons to be delivered on or before May 1, 1890, and thereafter from 2000 to 3000 tons per annum; the larger portion of the bark to be delivered during the summer and fall of the year in which it shall be peeled, and that said first parties shall use due diligence to deliver as much thereof as possible during said season; Lapham & Co. to pay $4.75 per ton for the bark delivered before May 1, 1890, and $5.00 for the bark delivered thereafter.

That upon the date of said agreement and in pursuance thereof, said Lapham & Co. advanced to said first parties the sum of $6,000 and took a judgment note therefor, payable, $1,000 May 1, 1890, $2,500 May 1, 1891, and the balance May 1, 1892 with interest; the said Lapham & Co. to have the right to deduct out of payments to be made on the bark delivered before May 1, 1890, $1,000, and interest, to apply on said note, and thereafter the sum of $1.00 per ton as fast as said bark should be delivered.

That on March 17, 1890, said C. E. Hoyt and Martin F. Lantz sold their undivided one half interest in said lands to said R. C. Osburn, J. Van Reed and Solomon Shaffer with all their right, title and interest in said contract and all moneys due thereon and the said Osburn, Van Reed and Shaffer assumed all the liabilities of said Hoyt and Lantz under said contract; and they immediately formed a copartnership with Charles and Jerry Brown, under the firm name of Brown, Shaffer & Co., for the purpose of cutting and removing the timber and bark from said land and fulfilling the terms of said contract with H. G. Lapham & Co.

That no bark was delivered prior to March 17, 1890, but in said year of 1890, 548 tons of bark were delivered to the tannery under said contract; in 1891, 886 tons were delivered, and in 1892, 259 tons were delivered, of which about 158 tons were under the Lapham contract.

That Brown, Shaffer & Co. assumed the right to cut, haul and deliver all said bark under the terms of the Lapham contract, and did so deliver the same by virtue thereof.

That on March 9, 1891, Solomon Shaffer, as manager for Brown, Shaffer & Co., took from Charles and Jerry Brown a judgment note for $12,000 as collateral security for the fulfillment of the Lapham contract, upon which judgment was entered and the interest of Charles and Jerry Brown in said land was sold on said judgment by the sheriff on September 1, 1893, and was purchased by said Osburn, Van Reed and Shaffer with full knowledge of and subject to the terms and conditions of the Lapham contract; the firm of Brown, Shaffer & Co. was then dissolved and thereafter the said Osburn, Van Reed and Shaffer assumed and took control of said lands.

That since the year 1892 no part of the bark has been delivered at the Sterling Run Tannery, and during 1893 and 1894 no bark was cut or peeled; that in May, 1895, Osburn, Van Reed and Shaffer commenced to cut and peel the bark and to remove the same from the lands; that as soon as plaintiffs learned this they caused notice to be given to them requiring them to fulfill the Lapham contract; that they declined to do so, alleging as an excuse that they could not afford so to do.

That there is now upon the lands upon the trees standing and in course of being peeled a large amount of bark which it would require several years to deliver, which plaintiffs are entitled to have delivered at the Sterling Run Tannery under the Lapham contract. That the defendants threaten to deliver this bark elsewhere.

That on April 21, 1893, the Elk Tanning Company purchased of Lapham & Co. all the lands and plant of the Sterling Run Tannery, and has been operating said tannery since then for the purpose of tanning sole leather, and that large quantities of hemlock bark are needed for this purpose; that it is necessary for said purpose that the bark from these lands should be delivered at said tannery, the lands being located contiguous and within about three miles of said tannery; that the tannery was erected and is operated at great expense and that the supply of bark is limited; that the loss of said bark to the Elk Tanning Co. would cause great loss and irreparable damage to the plaintiffs.

That Lapham & Co. assigned to the Elk Tanning Co. the Lapham contract on April 24, 1893; that said Elk Tanning Co. assumed all the obligations of Lapham & Co. under the same; that said assignment was made in pursuance of an agreement between Lapham & Co. and the Elk Tanning Co. to sell and convey to said company all the property and contracts relating thereto; that the Elk Tanning Company agreed to pay to Lapham & Co. for this bark, if it was delivered in accordance with the terms of the Lapham contract.

That by reason of the nonfulfillment of the Lapham contract by Osburn, Van Reed and Shaffer, H. G. Lapham & Co. are unable to obtain payment from the Elk Tanning Co. for the said bark or to ascertain the amount of the same, thereby suffering great loss and damage, and are unable to obtain their just rights. That Lapham & Co. have performed all the terms and conditions of said contract, and that the Elk Tanning Co. is ready and willing to pay, fulfill and perform the same. That on the 20th day of June, 1894, the said Elk Tanning Company notified Osburn, Van Reed and Shaffer of the assignment of the said contract to it and insisted upon the performance of the same, and requested them to say what amount of bark they expected to deliver that season, which they neglected to do.

The bill prayed that the defendants be restrained by injunction preliminary until hearing and perpetual thereafter from selling, removing or disposing of said bark, and that they may be compelled specifically to perform their part of the agreement. Defendants resisted the granting of the injunction and contend that a court of equity has no jurisdiction as the plaintiffs have a full and adequate remedy at law and can be compensated in damages and no ground is laid in the bill which would justify a decree for specific performance.

The court made the following order for special service:

And now, June 25, 1895, upon presentation to me of the affidavit of B. W. Green and on motion of C. H. McCauley and Green & Calkins, solicitors for plaintiffs, it is ordered, adjudged and decreed that service of the bill and injunction in the above entitled case may be made upon the above named J. Van Reed and Solomon Shaffer at Reynoldsville, Jefferson county, Pa., and upon R. C. Osburn, at Falls Creek, either in Jefferson or Clearfield counties, Pa., or wherever said defendants may be

found in the commonwealth of Pennsylvania, by the sheriff of Cameron county, Pa., or his authorized deputy in the same manner as if service could be had in the county of Cameron. A copy of this order to be served with said bill and injunction.

The court granted a preliminary injunction which, on July 12, 1895, was continued; MAYER, P. J., filing an opinion, which, after reciting the facts alleged in the bill, proceeded as follows :

While in general a court of equity will not take upon itself to decree specific performance where chattel property alone is concerned, its jurisdiction to do so is no longer to be doubted, and no good reason exists against the exercise of the jurisdiction in any case where compensation in damages would not furnish a complete and satisfactory remedy. The rule that such contracts are not usually enforced specifically, as are contracts which relate to real property, does not rest on the ground of any distinction between the two classes of property other than that which arises from their character. Contracts which relate to real property can necessarily be satisfied only by a conveyance of the particular estate or parcel contracted for, while those which relate to personal property are often fully satisfied by damages which enable the party injured to obtain elsewhere in the market property precisely similiar to that which he had agreed to purchase. The distinction between real and personal property is entirely subordinate to the question whether an adequate remedy can thus be afforded. If from the nature of the personal property it cannot, a court of equity will entertain jurisdiction to enforce the contract: 2 Beach on Modern Equity Jurisprudence, sec. 598; Adams v. Messinger, 147 Mass. 185; 9 Am. St. Rep. 679.

We are of the opinion that this contract is one of which the court may properly decree, so far as the present defendants are concerned, a specific performance. There can be no adequate compensation in damages at law for the breach of such a contract. Its profits depending upon future events cannot be correctly estimated by a jury, but must be a matter of mere conjecture. Besides it is reasonable to suppose that the plaintiffs who are owners of a tannery purchased the bark by reason of its proximity to their plant, and this would be quite an advantage to them, and it is questionable whether they could go into the market and purchase bark as an ordinary article of merchandise.

The case of Buxton v. Leiter and Cooper, 3 Atk. 383, was on a bill filed for the specific performance of the following agreement : " M. L. and J. C. have agreed with J. B. for the purchase of all those several large parcels of wood, consisting of oaks, ashes, elms and asps, which are numbered, figured and cyphered, standing and being within the township of K. for the sum of £3,050, to be paid at six several payments, every lady-day, for the six following years, and L. and C. to have eight years for disposing of the same; and that articles of agreement shall be drawn and perfected, as soon as conveniently can be, with all the usual covenants therein to be inserted concerning the same." It was determined that while, as a general rule, the court will not entertain a bill for a specific performance of contracts for chattels, or which relate to merchandise, but leave it to law, where the remedy is much more expeditious, yet in that case the agreement not being final, but to be made complete by subsequent acts, a bill to carry it into execution would be allowed. Lord HARDWICKE, in giving his opinion, cited the case of Taylor v. Neville, which was for performance of articles for sale of eight hundred tons of iron, to be paid for in a certain number of years, and by installments ; and a specific performance was decreed. He remarked that such sort of contracts as these differ from those that are immediately to be executed. He mentioned several cases as illustrating the exception to the general rule. A man may contract for the purchase of a great quantity of timber, as a ship carpenter, by reason of the vicinity of the timber, and this would be a great advantage on the part of the buyer. On the part of the seller, there may be a peculiar convenience and advantage in the bargain, as suppose a man wants to clear his land, in order to turn it to a particular sort of husbandry ; there nothing can answer the justice of the case but the performance of the contract in specie. Lord HARDWICKE also cited a case of the Duke of Buckinghamshire v. Ward, where a bill was brought for a specific performance of a lease relating to alum works and the trade thereof, which would be greatly damaged if the covenant was not performed on the part of Ward. The covenants lay there in damages ; the court decreed a specific performance, because they considered if they did not make such a decree, an action would not afterwards answer the justice of the case : Furman v. Clark, 11 N. J. Eq. Rep. 310.

Though in general the court of chancery will not entertain a bill for specific performance of contracts for chattels relating to merchandise, but will leave the party to his remedy at law, yet, notwithstanding this general distinction between personal contracts for goods and contracts for lands, in some cases contracts for personal property are enforceable in equity, but the court will weigh such cases with greater nicety than those which relate to real property : Cutting v. Dana, 25 N. J. Eq. Rep. 270.

The jurisdiction of · this court, to decree specific performance of contracts for sale of chattels is as well settled as it is for those of the sale of realty, and is based upon the same grounds, namely, the inability of the courts of law to give such remedy.   And so the question, whether the court will, in a particular case, exercise its jurisdiction, is to be determined upon the same considerations in both cases, the most important being the question, whether there is a full, complete and adequate remedy at law. And the reason why the jurisdiction is seldom exercised over sales of chattels is, that the remedy at law, in such cases, is usually adequate and satisfactory : Cutting v. Danna, 10 C. E. Gr. 265, and cases there cited : Pm. Spec. Perf. secs. 9–20 ; Waterm. Spec. Perf. secs. 16, 17 ; Rothholz v. Schwartz, 46 N. J. Eq. Rep. 481.

The injunction heretofore granted is continued, but without prejudice to the rights of Gleason & Sons under their contract, as they are not parties to the bill, and their rights cannot be determined under it.

*Errors assigned* among others were, (1) in making the order for special service ; (12) in continuing the injunction.

*J. P. McNarney,* of *Johnson & McNarney,* and *George A. Jenks,* for appellants.—The act of 1859 requires that the order of service shall limit a time depending upon the place where the process is to be served, after the service thereof, within which compliance with the requirements thereof must be made by the defendant or defendants.   It will appear upon an examination of the order that this provision of the act has not been complied with.

In proceedings where service is attempted in modes different from the course of the common law the statute must be strictly

pursued to give jurisdiction: Jordan v. Giblin, 12 Cal. 100 ; Okeson's App., 2 Grant's Cases, 303.

Is this a case to which the act of April 6, 1859, P. L. 387, applies ? These defendants all live outside the county and no service was had upon any of them inside the county, therefore if there is any authority whatever in the court to make the order of service it is because this suit is "concerning goods, chattels, lands, tenements or hereditaments situate in Cameron county : " Sneathen v. Grubbs, 88 Pa. 147 ; Snell's Principles of Equity, 452.

A court of equity has no jurisdiction of a contract for the sale of bark : Falcke v. Gray, 4 Drew, 658 ; Dowling v. Betjeman, 2 J. & H. 544 ; Somerset v. Cookson, 3 P. Wms. 389 ; Pusey v. Pusey, 1 Vos. 273 ; Shreve v. Brereton, 51 Pa. 175.

There is an adequate remedy at law: Clark's App., 62 Pa. 447 ; Harkinson's App., 78 Pa. 196 ; Grubb's App., 90 Pa. 228 ; Benjamin on Sales, sec. 1305.

*John G. Johnson, Green & Calkins* and *C. H. McCauley* with him, for appellees.—The act of 1859 designates four distinct cases in which the plaintiff in any suit in equity may obtain an order of service upon defendants residing or being out of the jurisdiction of the court. These are :

1. Where the controversy concerns goods, chattels, lands, tenements or hereditaments within its jurisdiction.

2. Or where the proceedings are for the perpetuation of testimony concerning any lands, tenements within such county.

3. Or where the controversy concerns any charge, lien, judgment, mortgage or incumbrance on such lands, tenements, etc.

4. Or where jurisdiction of the subject-matter in controversy has been acquired by service of process on one or more of the principal defendants within the county.

It is not necessary, as contended by defendants, that the court must have jurisdiction of the subject-matter and that there must have been service on the principal defendants. Either will be sufficient : Huntzinger v. Coal Co., 11 Phila. 609.

The court had jurisdiction: Story's Eq., 8th ed. sec. 714 ; 2 Addison on Contracts, 8th ed. 945 ; Bank v. Schuylkill Bank, 1 Parson's Eq. 180 ; Kerr on Injunction, p. 12 ; Hilliard on Injunction, chap. 1, sec. 5 ; Brightly's Equity Jurisprudence,

p. 184; Story's Equity Jurisprudence, 10th ed. 717; McGowin v. Remington, 12 Pa. 61; Furman v. Clark, 11 N. J. 306; Hoare v. Dresser, 7 House of Lords Cases, 290; Bowers v. Bowers, 95 Pa. 477; Miller v. Zufall, 113 Pa. 317; Hirth v. Graham, 33 N. E. Rep. 90; Smart v. Pennis, 22 S. E. Rep. 509.

PER CURIAM, April 6, 1896:

This appeal is from the decree of August 10, 1895, continuing the preliminary injunction, theretofore granted, "without prejudice to the rights of Gleason & Sons," who were not then parties to the proceeding, but who on August 29, before this appeal was taken, were made parties defendant by amendment of the bill.

The subject-matter of the contract set out in the bill is within the jurisdiction of the court; and, if some of the defendants, nonresidents of the county, have not been regularly served with process, it is not too late to correct the error, if any there be. In the present undeveloped condition of the case we are not prepared to say there was any error in continuing the injunction. In view of this, and of the further fact that new parties defendant have been added, we think a reversal of the decree would be unwarranted. We purposely abstain from any expression of opinion as to the technical questions raised by appellants. In the present state of the case it is neither necessary nor proper that we should do so.

Decree affirmed and appeal dismissed, with costs to be paid by appellants.