## Martinelli v. Dougherty

*Samuel Kohn,* for plaintiff.

*Thomas A. Masterson,* for defendant.

OLIVER, P. J., January 27, 1955.—Plaintiff, Ugo Martinelli, alleged that on September 22, 1952, he and defendant, Kay Dougherty, entered into a written contract, whereby plaintiff agreed to manage, instruct, train and coach defendant in developing and improving her voice, personality, and stage presence; that, in return for this service, defendant agreed to pay plaintiff a commission of 25 percent (less booking agents' fees) of her gross earnings for a period of 10 years, with options to plaintiff to renew the contract at the end of that period; that plaintiff trained and coached defendant in her work for a period of 112 weeks and prepared defendant for work as a professional singer and entertainer; that defendant had one professional engagement in January 1954 and paid plaintiff part of the commission due him but refused to pay him the entire sum due; that defendant had one or more professional engagements since the engagement mentioned above, but had refused to pay plaintiff any further commission due him under the contract.

Plaintiff prayed that defendant be enjoined from singing or entertaining professionally unless she complied with the terms and conditions of the contract. He also prayed that the court command defendant specifically to perform the contract in all its essential terms.

In her answer, defendant admitted she signed the paper referred to by plaintiff, but denied that such paper was an enforcible contract; that, if it were a contract, plaintiff breached it by failing to promote the artistic abilities of defendant, by failing to give free lessons as provided for in the alleged contract, and by

failing to devote his entire working time to promote defendant's career.

By way of new matter defendant alleged that the contract was illegal and unenforcible because it was entered into in violation of the Act of July 31, 1941, P. L. 616, 43 PS §535, in that plaintiff, who was to act, and did act as an employment agent for defendant, was not licensed to act in such capacity as required by the aforesaid act; that the contract was not enforcible because it contained an unreasonable and illegal restraint of trade; that the contract was not enforcible in equity because plaintiff did not have clean hands in that he induced defendant to leave a well-paying position for the purpose of securing employment through him, which was a violation of 43 PS §560; that the contract was not enforcible in equity because it lacked mutuality of remedy or obligation and was unconscionable. Defendant denied that plaintiff was entitled to relief of any kind and prayed that the complaint be dismissed.

In his reply, plaintiff denied that the contract was illegal and unenforcible and also that he did not have clean hands. Plaintiff averred that he gave defendant at least two free lessons per week for 112 weeks. He denied all other averments in defendant's new matter and asked for such relief as the court deemed proper.

### Findings of Fact

The chancellor makes the following findings of fact:

1. On September 22, 1952, plaintiff and defendant entered into the written agreement, a copy of which was attached to the complaint.

2. This agreement provided, inter alia, that plaintiff was to coach, train and instruct defendant in voice, personality and stage presence. In return for these services defendant was to pay plaintiff a commission of 25 percent (less booking agents' fees) of the gross

earnings she received from her professional engagements, wherever they might be.

3. This agreement was to last for a period of 10 years with options in plaintiff to renew it up to a total of 40 years.

4. From March 1952 to January 1954 plaintiff gave defendant five lessons per week, at least two of which were given gratis.

5. In January 1954 defendant refused to pay plaintiff the commission on the salary she earned as a singer in a cafe in Philadelphia.

6. Since January 1954 defendant has had four singing engagements and has earned thereby $207.50. She has not paid plaintiff any commission on this income.

### Discussion

Defendant contends that the contract in question is illegal and unenforcible because plaintiff undertook to act as an employment agent for defendant, and was not licensed to act in such capacity as required by law. There is no merit to this contention. "Employment agent" is defined as "every person . . . engaged in, or maintaining . . . an . . . office, domestic and commercial employment agency, theatrical or entertainment employment agency . . . for the purpose of procuring or attempting to procure help or employment or engagements for persons . . . where a fee . . . is charged for such services": 43 PS §536.

It is obvious that plaintiff was not, and is not, an employment agent within the meaning of the act. Plaintiff is a teacher of voice and stage presence who undertook to act as defendant's manager. He was not primarily an agent who undertook to obtain employment for defendant. This is clear from the contract itself, which provided that, of her earnings, defendant was to pay plaintiff 25 percent, less whatever commis-

sions had to be paid to booking agents. It was contemplated, therefore, that defendant would have to obtain most, if not all, of her engagements with the help of booking agents who would charge a commission for this service. In this respect, plaintiff was simply her teacher and manager.

From the testimony it is obvious that plaintiff did all he was supposed to do under the contract and performed his duties in good faith. Defendant, on the other hand, breached the contract in January 1954 when, without legal justification or excuse, she refused to give plaintiff a commission to which he was entitled.

Plaintiff seeks to have this court require defendant specifically to perform the contract. Where a plaintiff's remedy at law is inadequate, a court of equity may, in its discretion, assume jurisdiction and require the parties specifically to perform their contract: 17 PS §282. Equity will grant specific performance where, as in the present case, the damages arising from the breach of contract are uncertain or largely conjectural and no certain pecuniary standard exists for the measurement of the damages: Vail et al. v. Osburn et al., 174 Pa. 580; Philadelphia Ball Club, Limited, v. Lajoie, 202 Pa. 210.

However, "there is nothing better settled than that a decree for specific performance is not a matter of course, but rests in the sound discretion of the chancellor. It may be refused, therefore, notwithstanding a contract obligation, if there be circumstances rendering it inequitable, and then the party seeking it is left to his action for damages": Friend v. Lamb, 152 Pa. 529. The contract in the present case is unconscionable in two respects: (1) It would prevent defendant from working any place in the world except for plaintiff; that territory is much too broad; (2) it has provisions

whereby, at plaintiff's option, it can be extended for a term of 40 years, which is much too long. In view of these two harsh and inequitable provisions the chancellor will not decree that the parties specifically perform the contract as it is written.

While it is true that a court of equity will not write a new contract for the parties, equity, in its discretion, may modify or limit harsh and unconscionable provisions of a contract in order to do substantial justice between the parties. A. L. I. Restatement of the Law of Contracts, §359, provides:

"(1) If the remedy in damages is found by the court to be inadequate, the determination of whether specific enforcement shall be decreed and what shall be the terms of the decree rests in the sound judicial discretion of the court. . . . (2) The decree need not be absolute in form, and the performance that it requires need not be identical with that promised in the contract; it may be so drawn as best to effectuate the purposes for which the contract was made, and it may be granted on such terms and conditions as justice requires." See Pennsylvania Annotations to A. L. I. Restatement of the Law of Contracts; see also Pomeroy's Specific Performance of Contracts (3rd ed.), §35 et seq.

The chancellor will enter a decree limiting the contract to a term of five years from the present date and also limiting the area within which this contract is to be in force to an area within 200 miles of Philadelphia. Plaintiff has no cause to complain about these modifications which eliminate the harsh features of this contract. "He who seeks equity must do equity."

Defendant testified that she has had four singing engagements since January 1954 in which she earned a total of $207.50. She admitted that she has not paid any commissions to plaintiff in connection with these

engagements. It is not necessary for plaintiff to bring a separate action at law for the money due him. Equity, having assumed jurisdiction, will dispose of the entire controversy to prevent unnecessary litigation: Wally et al. v. Wally et al., 286 Pa. 413; Curtis & Co., v. Olds, 250 Pa. 320.

### Conclusions of Law

The chancellor draws the following conclusions of law:

1. The contract entered into between plaintiff and defendant was a valid, binding, enforcible contract.

2. Defendant breached this contract in January 1954 when she failed to give plaintiff the commission to which he was then entitled.

3. Equity has jurisdiction specifically to enforce this contract.

4. Where, as in the present case, the contract contains harsh and unconscionable provisions, a court of equity may require specific performance with a modification of the inequitable provisions.

### Decree Nisi

And now, January 27, 1955, this cause having been heard on bill, answer and proofs, it is ordered, adjudged and decreed as follows:

1. Plaintiff is to continue to render services to defendant pursuant to the terms of the contract.

2. Upon professional engagements of defendant as a singer and/or entertainer in any club, theatre, cafe, or on television, radio, or recordings, defendant shall pay to plaintiff 25 percent (less booking agents' commissions) of her gross earnings from all and any such engagements.

3. This decree is limited to a term of five years from the present date and to an area within 200 miles of Philadelphia.

4. Defendant is ordered to account to plaintiff for the four professional engagements she has had since January 1954, and for each and all other engagements she has had to date and may hereafter have down to January 26, 1960, in or about Philadelphia or within 200 miles thereof.

5. The costs of these proceedings shall be paid by defendant.

The prothonotary is directed to enter this decree nisi and to give notice thereof to the parties or their counsel of record, and unless exceptions are filed within 20 days thereafter, the decree nisi shall become the final decree, as of course.