## Philadelphia Ball Club, Limited, Appellant, *v.* Lajoie.

*Contract—Personal skill—Baseball player—Injunction.*

Where one person agrees to render personal services to another, which require and presuppose a special knowledge, skill and ability in the employee so that in case of default the same service could not easily be obtained from others, although the affirmative specific performance of the contract is beyond the power of the court, its performance will be negatively enforced by enjoining its breach. The damage for breach of such contract cannot be estimated with any certainty, and the employer cannot by means of any damages purchase the same service in the labor market. Proof of the impossibility of obtaining equivalent service, is not prerequisite to such relief.

Where a baseball player has contracted to play with a particular club for a certain term, he will be enjoined from playing with another club during the continuance of the term, where the evidence shows that he was an expert player in any position, with a great reputation as a second baseman; that he had been for several years in the service of the plaintiff club, and had been re-engaged from season to season at a constantly increasing salary; that he had become thoroughly familiar with the action and methods of the other players of the club, and that his own work was peculiarly meritorious as an integral part of the team work; and in addition that he was well known, and had a great reputation among the patrons of the sport, for ability in the position which he filled, and was thus a most attractive drawing card for the public.

*Contract—Breach—Irreparable injury.*

Where a breach of contract involves a loss which would be a matter of uncertainty, and for which no certain pecuniary standard exists for the measurement of the damages, the breach may be deemed to cause irreparable injury.

*Contract—Mutuality—Equity—Ball player.*

Mutuality of remedy does not require that each party to a contract should have precisely the same remedy, either in form, effect or extent. In a fair and reasonable contract it ought to be sufficient that each party has the

possibility of compelling the performance of the promises which were mutually agreed upon.

A contract between a baseball player and a club gave to the club a right to renew the contract on notice for three successive years and provided that the club might terminate the contract and release the player upon ten days' notice and payment of salary for that time and expenses of the player in getting to his home. A large salary was to be paid to the player, and it was expressly stipulated that the salary was in part based upon the concessions of release and renewals given to the club. It was also expressly stipulated that the club might enforce by appropriate proceedings the specific performance of the contract. The contract was performed in part, and the player then signed with another club. A bill in equity was filed against him to enjoin the playing with the other club. *Held*, (1) that there was no lack of mutuality in the contract; (2) that the fact of part performance of the contract would justify a decree in favor of the plaintiff, without regard to the question of mutuality; (3) that the plaintiff was entitled to an injunction.

Argued Jan. 16, 1902. Appeal, No. 326, Jan. T., 1902, by plaintiff, from decree of C. P. No. 5, Phila. Co., dismissing bill in equity in case of Philadelphia Ball Club, Limited, v. Napoleon Lajoie et al. Before McCollum, C. J., Mitchell, Dean, Fell, Brown, Mestrezat and Potter, JJ. Reversed.

Bill in equity for an injunction. Before Ralston, J.

From the record it appeared that the defendant was employed by the plaintiff as a baseball player under a contract dated April 18, 1900, the materal portions of which were as follows:

5. It is mutually agreed between the parties thereto, that if the said party of the second part shall, at any time during the said term of his employment as aforesaid, without the written consent of said party of the first part, or its assigns, leave the service, or perform service or agree to perform, in the future, services for any other club or organization whatever, or if he shall be guilty of offering, agreeing, conspiring or attempting to lose any game of ball, or if he shall be interested in any pool or wager thereon, he may be expelled by said party of the first part, or its assigns, from its club. Or, if said party of the first part, or its assigns, shall so elect, it may institute and prosecute proceedings in any court of competent jurisdiction, either in law or equity, to obtain damages for any breach of this contract, or to enforce the specific performance thereof by the said party of the second part or to enjoin said party of

the second part from performing services for any other person or organization, during the period of service herein contracted for, and nothing herein contained shall be construed to prevent such remedy in the courts, in case of any breach of this agreement by said party of the second part, as said party of the first part, or its assigns, may elect to invoke.

17. It is further understood and agreed, that the party of the first part, or its assigns, may at any time after the beginning and prior to the completion of the period of this contract, give the party of the second part ten days' written notice of its option and intention to end and determine all its liabilities and obligations under this contract, in which event, upon the expiration of said ten days, all liabilities and obligations undertaken by said party of the first part, or its assigns, in this contract, shall at once cease and determine; the said party of the second part shall thereupon be also freed and discharged from his obligations hereunder, and shall have no claim for salary or other compensation for any period after said ten days. If such notice be given to the party of the second part while "abroad" with the club, he shall be entitled, at or before the expiration of said ten days, to his necessary traveling expenses to the city of Philadelphia. But if this contract shall be so ended and determined by said party of the first part, or its assigns, after the beginning and before the end of the term of employment under this contract, without any fault or neglect of duty on the part of the party of the second part, then the said party of the second part shall be entitled to salary or compensation at the contract rate for said ten days in addition to the sum earned and due, and unpaid to him at the time of the giving of notice of termination as aforesaid, whether during said ten days the party of the second part shall be required to perform services, or not, but he may be required to perform services under this contract, during said ten days, at the option of said party of the first part, or its assigns, without affecting the validity or force of such notice.

18. In consideration of the faithful performance of the conditions, covenants, undertakings and promises herein by the said party of the second part, inclusive of the concession of the options of release and renewals prescribed in the seventeenth and nineteenth paragraphs, the said party of the first part, for it-

self and its assigns, hereby agrees to pay to him for his services for said term, the sum of $2,400, payable as follows : in half monthly instalments on the 1st and 15th of each month thereafter, during the period specified in paragraph two ; unless the "nine" or team of the club should be "abroad," for the purpose of playing games, in which event the instalment then falling due shall be paid on the first week day after the return "home" of the "nine" or team.

19. It is hereby expressly understood and agreed for the consideration above mentioned, that the party of the first part, or its assigns shall have the option or right to renew this contract with all its terms, provisions and conditions for another period of six months, beginning April 15, 1901, and for a similar period in two successive years thereafter, and the said party of the second part hereby agrees to perform similar services and be subject to all the obligations, duties and liabilities prescribed in this contract for the period or periods of such renewal or renewals, provided only that written notice of the exercise of such option of renewal be served upon the said party of the second part prior to the 15th day of October of the current year of this contract and of the current year of and renewal thereof.

The plaintiff renewed the contract for the year 1901. In the mean time defendant had signed a contract with the Philadelphia American League Base Ball Club. The qualifications of the defendant as a player are stated in the opinion of the Supreme Court.

The court below in an opinion by RALSTON, J., dismissed the bill.

*Error assigned* was in dismissing the bill.

*John I. Rogers* and *John G. Johnson*, for appellant.—In view of the exceptional skill of the defendant, the injunction should have issued : Philadelphia Ball Club v. Hallman, 8 Pa. C. C. Rep. 57; American Assn. Base Ball Club of Kansas City v. Pickett, 8 Pa. C. C. Rep. 232 ; Metropolitan Exhibition Co. v. Ward, 24 Abb. N. C. 393 ; 9 N. Y. Supp. 779; Singer Sewing Machine Co. v. Union Buttonhole, etc., Co., 1 Holmes, 253.

The contract did not lack mutuality : Rust v. Conrad, 47

Mich. 449; Grove v. Hodges, 55 Pa. 516 ; Singer Sewing Machine Co. v. Union Buttonhole, etc., Co., 1 Holmes, 253 ; Franklin Telegraph Co. v. Harrison, 145 U. S. 459 ; 12 Sup. Ct. Repr. 900 ; Van Dorn v. Robinson, 16 N. J. Eq. 256 ; Yerkes v. Richards, 153 Pa. 646.

*Richard C. Dale*, with him *William J. Turner*, for appellee.— The decree should be affirmed because the contract between the appellant and the appellee Napoleon Lajoie, which is the foundation of this suit, is so lacking in mutuality as not to be enforceable by injunction: Wilson v. Clarke, 1 W. & S. 554 ; Martinsburg Bank v. Central Pa. Telephone, etc., Co., 150 Pa. 26 ; Crane v. Crane, 105 Fed. Repr. 869 ; Bickford v. Davis, 11 Fed. Repr. 549 ; Harrisburg Base Ball Club v. Athletic Assn., 8 Pa. C. C. Rep. 337 ; Philadelphia Base Ball Club v. Hallman, 20 Phila. 276 ; Metropolitan Exhibition Co. v. Ward, 9 N. Y. Supp. 779 ; Rust v. Conrad, 47 Mich. 449 ; Patton v. Develin, 2 Phila. 103 ; Dornan's Est., 2 W. N. C. 522 ; Philips v. Mining & Mfg. Company, 7 Phila. 619 ; Bodine v. Glading, 21 Pa. 50 ; Meason v. Kaine, 63 Pa. 335 ; Harrisburg Base Ball Club v. Athletic Assn., 8 Pa. C. C. Rep. 337.

The decree should be affirmed because the services of a baseball player are not unique, extraordinary, or of such a personal or intellectual character that their loss could not be substantially supplied by the similar services of some other baseball player: Lumley v. Wagner, 1 DeG. M. & G. 603 ; McCaull v. Braham, 16 Fed. Repr. 37 ; Daly v. Smith, 49 Howard's Pr. 150 ; Ford v. Jermon, 6 Phila. 6.

The decree of the lower court should be affirmed because even if the services of a baseball player might, under certain circumstances, be so unique, personal and extraordinary as to admit of the remedy by injunction, yet it does not appear that the place of the appellee Lajoie in this case cannot be, at least substantially, supplied by other baseball players, or that the appellant has suffered any irreparable injury: American Assn. Base Ball Club v. Pickett, 20 Phila. 298 ; Philadelphia Base Ball Club v. Hallman, 20 Phila. 276 ; Metropolitan Exhibition Co. v. Ward, 9 N. Y. Supp. 779 ; Metropolitan Exhibition Company v. Ewing, 42 Fed. Repr. 198 ; Carter v. Ferguson,

12 N. Y. Supp. 580 ; Rogers Mfg. Co. v. Rogers, 58 Conn. 356 ; 20 Atl. Repr. 467 ; Jaccard Jewelry Co. v. O'Brien, 70 Mo. App. 432; Burney v. Ryle & Co., 91 Ga. 701 ; 17 S. E. Repr. 986.

The appellant's bill as a whole discloses no cause for equitable interference, because the injunction prayed for, if granted, would simply work a hardship to the appellees, without any particular benefit to the appellant : Oil Creek R. R. Co. v. Atlantic, etc., R. R. Co., 57 Pa. 72.

The decree in this case should be affirmed because the subject-matter of the controversy between the parties is passed and ended, and could not be affected by a reversal of the decree of the court below : Harper v. Roberts, 22 Pa. 194 ; Singer Mfg. Co. v. Wright, 141 U. S. 696 ; 12 Sup. Ct. Repr. 103.

The decree of the lower court should be affirmed because the fifth paragraph of the contract between appellant and appellee Lajoie does not preclude the said appellee from setting up or the court from considering the defense of nonmutuality, or any other of the above-stated defenses to this proceeding : Pope Mfg. Co. v. Gormully, 144 U. S. 224 ; 12 Sup. Ct. Repr. 632.

OPINION BY MR. JUSTICE POTTER, April 21, 1902 :

The defendant in this case contracted to serve the plaintiff as a baseball player for a stipulated time. During that period he was not to play for any other club. He violated his agreement, however, during the term of his engagement, and in disregard of his contract, arranged to play for another and a rival organization.

The plaintiff by means of this bill, sought to restrain him, during the period covered by the contract.

The court below refused an injunction, holding that to warrant the interference prayed for, " The defendant's services must be unique, extraordinary, and of such a character as to render it impossible to replace him; so that his breach of contract would result in irreparable loss to the plaintiff." In the view of the court, the defendant's qualifications did not measure up to this high standard. The trial court was also of opinion that the contract was lacking in mutuality; for the reason that it gave plaintiff an option to discharge defendant on ten

days' notice, without a reciprocal right on the part of defendant.

The learned judge who filed the opinion in the court below, with great industry and painstaking care, collected and reviewed the English and American decisions bearing upon the question involved, and makes apparent the wide divergence of opinion which has prevailed.

We think, however, that in refusing relief unless the defendant's services were shown to be of such a character as to render it impossible to replace him, he has taken extreme ground.

It seems to us that a more just and equitable rule is laid down in Pomeroy on Specific Performance, page 31, where the principle is thus declared: " Where one person agrees to render personal services to another, which require and presuppose a special knowledge, skill and ability in the employee, so that in case of a default the same service could not easily be obtained from others, although the affirmative specific performance of the contract is beyond the power of the court, its performance will be negatively enforced by enjoining its breach. . . . The damages for breach of such contract cannot be estimated with any certainty, and the employer cannot, by means of any damages, purchase the same service in the labor market."

We have not found any case going to the length of requiring as a condition of relief, proof of the impossibility of obtaining equivalent service. It is true that the injury must be irreparable, but as observed by Mr. Justice LOWRIE, in Commonwealth v. Pittsburg, etc., Railroad Company, 24 Pa. 160, " The argument that there is no ' irreparable damage ' would not be so often used by wrongdoers if they would take the trouble to discover that the word ' irreparable ' is a very unhappily chosen one, used in expressing the rule that an injunction may issue to prevent wrongs of a repeated and continuing character, or which occasion damages which are estimated only by conjecture, and not by any accurate standard."

We are therefore within the term whenever it is shown that no certain pecuniary standard exists for the measurement of the damages. This principle is applied in Vail v. Osburn, 174 Pa. 580. That case is authority for the proposition that a court of equity will act where nothing can answer the justice of the case but the performance of the contract in specie; and

this even where the subject of the contract is what under ordinary circumstances would be only an article of merchandise. In such a case, when owing to special features, the contract involves peculiar convenience or advantage, or where the loss would be a matter of uncertainty, then the breach may be deemed to cause irreparable injury.

The court below finds from the testimony that "the defendant is an expert baseball player in any position; that he has a great reputation as a second baseman; that his place would be hard to fill with as good a player; that his withdrawal from the team would weaken it, as would the withdrawal of any good player, and would probably make a difference in the size of the audiences attending the game."

We think that in thus stating it, he puts it very mildly, and that the evidence would warrant a stronger finding as to the ability of the defendant as an expert ball player. He has been for several years in the service of the plaintiff club, and has been re-engaged from season to season at a constantly increasing salary. He has become thoroughly familiar with the action and methods of the other players in the club, and his own work is peculiarly meritorious as an integral part of the team work which is so essential. In addition to these features which render his services of peculiar and special value to the plaintiff, and not easily replaced, Lajoie is well known, and has great reputation among the patrons of the sport, for ability in the position which he filled, and was thus a most attractive drawing card for the public. He may not be the sun in the baseball firmament, but he is certainly a bright, particular star.

We feel therefore that the evidence in this case justifies the conclusion that the services of the defendant are of such a unique character, and display such a special knowledge, skill and ability as renders them of peculiar value to the plaintiff, and so difficult of substitution, that their loss will produce irreparable injury, in the legal significance of that term, to the plaintiff. The action of the defendant in violating his contract is a breach of good faith, for which there would be no adequate redress at law, and the case therefore properly calls for the aid of equity, in negatively enforcing the performance of the contract, by enjoining against its breach.

But the court below was also of the opinion that the contract

was lacking in mutuality of remedy, and considered that as a controlling reason for the refusal of an injunction. The opinion quotes the nineteenth paragraph of the contract, which gives to the plaintiff a right of renewal for the period of six months beginning April 15, 1901, and for a similar period in two successive years thereafter. The seventeenth paragraph also provides for the termination of the contract upon ten days' notice by the plaintiff. But the eighteenth paragraph is also of importance, and should not be overlooked. It provides as follows: "18. In consideration of the faithful performance of the conditions, covenants, undertakings and promises herein by the said party of the second part, inclusive of the concession of the options of release and renewals prescribed in the seventeenth and nineteenth paragraphs, the said party of the first part, for itself and its assigns, hereby agrees to pay to him for his services for said term the sum of $2,400, payable as follows," etc.

And turning to the fifth paragraph, we find that it provides expressly for proceedings, either in law or equity, " to enforce the specific performance by the said party of the second part, or to enjoin said party of the second part from performing services for any other person or organization during the period of service herein contracted for. And nothing herein contained shall be construed to prevent such remedy in the courts in case of any breach of this agreement by said party of the second part, as said party of the first part, or its assigns, may elect to invoke."

We have then at the outset, the fact that the paragraphs now criticised and relied upon in defense, were deliberately accepted by the defendant, and that such acceptance was made part of the inducement for the plaintiff to enter into the contract. We have the further fact that the contract has been partially executed by services rendered, and payment made therefor; so that the situation is not now the same as when the contract was wholly executory. The relation between the parties has been so far changed, as to give to the plaintiff an equity arising out of the part performance, to insist upon the completion of the agreement according to its terms by the defendant. This equity may be distinguished from the original right under the contract itself, and it might well be questioned whether the

court would not be justified in giving effect to it by injunction, without regard to the mutuality or nonmutuality in the original contract. The plaintiff has so far performed its part of the contract in entire good faith, in every detail; and it would, therefore, be inequitable to permit the defendant to withdraw from the agreement at this late day.

The term mutuality, or lack of mutuality, does not always convey a clear and definite meaning. As was said in Grove v. Hodges, 55 Pa. 516, "The legal principle that contracts must be mutual, does not mean that in every case each party must have the same remedy for a breach by the other."

In the contract now before us, the defendant agreed to furnish his skilled professional services to the plaintiff for a period which might be extended over three years by proper notice given before the close of each current year. Upon the other hand, the plaintiff retained the right to terminate the contract upon ten days' notice, and the payment of salary for that time, and the expenses of defendant in getting to his home. But the fact of this concession to the plaintiff is distinctly pointed out as part of the consideration for the large salary paid to the defendant, and is emphasized as such. And owing to the peculiar nature of the services demanded by the business, and the high degree of efficiency which must be maintained, the stipulation is not unreasonable. Particularly is this true when it is remembered that the plaintiff has played for years under substantially the same regulations.

We are not persuaded that the terms of this contract manifest any lack of mutuality in remedy. Each party has the possibility of enforcing all the rights stipulated for in the agreement. It is true that the terms make it possible for the plaintiff to put an end to the contract in a space of time much less than the period during which the defendant has agreed to supply his personal services; but mere difference in the rights stipulated for, does not destroy mutuality of remedy. Freedom of contract covers a wide range of obligation and duty as between the parties, and it may not be impaired, so long as the bounds of reasonableness and fairness are not transgressed.

If the doctrine laid down in Rust v. Conrad, 47 Mich. 449, quoted in the opinion, is to prevail, it would seem that the power of the plaintiff to terminate the contract upon short no-

tice, destroys the mutuality of the remedy. But we are not satisfied with the reasoning intended to support that conclusion. We cannot agree that mutuality of remedy requires that each party should have precisely the same remedy, either in form, effect or extent. In a fair and reasonable contract, it ought to be sufficient that each party has the possibility of compelling the performance of the promises which were mutually agreed upon.

It is true also that the case of Rutland Marble Co. v. Ripley, 10 Wall. 339, also quoted in the opinion, while not turning exclusively upon that point, seems to hold that a contract in which the plaintiff has an option to terminate it in a year, cannot be enforced in equity on account of lack of mutuality; but in Singer Sewing Machine Co. v. Union Buttonhole, etc., Co., Holmes' Reports, 253, Judge LOWELL says, with reference to that case : " I cannot think that the court intended to announce any general proposition that they would never enforce a contract which one party had a right to put an end to in a year. Everything must depend upon the nature and circumstances of the business."

This judgment seems to be borne out, for in a later case, that of Franklin Telegraph Co. v. Harrison, 145 U. S. 459; 12 Sup. Ct. Repr. 900, where the plaintiff had a right to terminate the contract for telegraphic service at the end of any year, while the defendant's obligation continued as long as the plaintiff chose to pay the yearly price for the services, the doctrine that such conditions constituted lack of mutuality does not seem to have been recognized.

In Singer Co. v. Union Co., supra, which was a case where an injunction was allowed against the defendant, although the plaintiff had the right to terminate the contract, Judge LOWELL in the course of a strongly reasoned opinion says, page 260, "In many of the cases that I have cited, the plaintiff had it in his power to end the contract. It is certainly competent to the parties to make a contract which will be equitable and reasonable, and in which their rights ought to be protected while they last, though it may be terminable by various circumstances, and though one party may have the sole right to terminate it, provided their stipulation is not one that makes the whole contract inequitable."

On page 258, he says : "I think the fair result of the later cases may be thus expressed. If the case is one in which a negative remedy of injunction will do substantial justice between the parties, by obliging the defendant either to carry out his contract or lose all benefit of the breach, and the remedy at law is inadequate, and there is no reason of policy against it, the court will interfere to restrain conduct which is contrary to the contract, although it may be unable to enforce a specific performance of it."

The case now before us comes easily within the rule as above stated. The defendant sold to the plaintiff for a valuable consideration the exclusive right to his professional services for a stipulated period, unless sooner surrendered by the plaintiff; which could only be, after due and reasonable notice and payment of salary and expenses until the expiration. Why should not a court of equity protect such an agreement until it is terminated? The court cannot compel the defendant to play for the plaintiff, but it can restrain him from playing for another club in violation of his agreement. No reason is given why this should not be done, except that presented by the argument that the right given to the plaintiff to terminate the contract upon ten days' notice destroys the mutuality of the remedy. But to this it may be answered, that as already stated, the defendant has the possibility of enforcing all the rights for which he stipulated in the agreement, which is all that he can reasonably ask; furthermore, owing to the peculiar nature and circumstances of the business, the reservation upon the part of the plaintiff to terminate upon short notice, does not make the whole contract inequitable.

In this connection another observation may be made, which is that the plaintiff by the act of bringing this suit, has disavowed any intention of exercising the right to terminate the contract on its own part. This is a necessary inference from its action in asking the court to exercise its equity power to enforce the agreement made by the defendant not to give his services to any other club. Besides, the remedy by injunction is elastic and adaptable, and is wholly within the control of the court. If granted now, it can be easily dissolved whenever a change in the circumstances or in the attitude of the plaintiff should seem to require it. The granting or refusal of an injunc-

tion or its continuance is never a matter of strict right, but is always a question of discretion to be determined by the court in view of the particular circumstances.

Upon a careful consideration of the whole case, we are of opinion that the provisions of the contract are reasonable, and that the consideration is fully adequate. The evidence shows no indications of any attempt at overreaching or unfairness. Substantial justice between the parties requires that the court should restrain the defendant from playing for any other club during the term of his contract with the plaintiff.

The bill as filed contemplated only the services of defendant for the season of 1901, but it is stated in the argument of counsel, that since the hearing in the court below, and prior to the argument in this court, the plaintiff by due notice renewed the current contract for the season of 1902.

The specifications of error are sustained, and the decree of the court below is reversed, and the bill is reinstated. And it is ordered that the record be remitted to the court below for further proceedings in accordance with this opinion.