## Kuhns v. Loetzbier, Appellant.

*Contract—Sale of business—Restriction on trade—Husband and wife.*

1. A husband and wife who jointly sell a bakery business may legally bind themselves by a covenant in the agreement of sale, not to own, engage in, or be employed by any other bakery shop in the town where the business is situated or the vicinity of ten miles, for a period of ten years from the date of this agreement.

2. If, after making such an agreement, the husband purchases a grocery store with a bakery shop connected with it, and the wife attends to the business of the grocery store in addition to her ordinary household duties, and sells the bread which the husband makes in the bakery, she may be held jointly liable with her husband in an action for damages for a breach of the covenant in the agreement.

3. The term "bakery shop" as used in such an agreement, includes not only the acts in making the bread and selling it, but of selling the product manufactured by others, either in a shop especially set up for that purpose, or through a place where other articles of commerce are sold, or peddling it without having an established place.

Argued April 20, 1914. Appeal, No. 35, April T., 1914, by defendant, from judgment of C. P. Westmoreland Co., May T., 1910, No. 785, on verdict for plaintiff in case of Elizabeth Kuhns, in own right and for her own use, and as Executor of the Estate of Ralph B. Kuhns, v. Peter Loetzbier and Emma Loetzbier. Before RICE, P. J., HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ. Affirmed.

Assumpsit for breach of a covenant in a contract. Before McCONNELL, J.

The facts are stated in the opinion of the Superior Court.

At the trial the defendant presented, inter alia, the following point:

1. Assuming that the defendant, Emma Loetzbier, wife of the other defendant, is liable for a breach of the contract in suit, there is no evidence in the case that she has broken it in any way; it has not been shown

that she was the owner of the grocery store or that she was the owner of the bakery, or, in any way, employed in or about the latter or interested in it; it only appears that she assisted her husband in the grocery store, without wages, whilst she was, during the same period of time, performing the ordinary duties of a housewife. Besides, the law regards these duties as in harmony with the marital relations and they cannot be regarded as having been performed in breach of the contract in suit.    *Answer:* The affirmance of those points you will readily observe would dispose of the whole case without leaving anything to be submitted to the jury. We must look at all the evidence in the case and not look at it from the standpoint of one of the parties alone, in speaking of what the court can do and what the court cannot do.    From the testimony as given by the defendants, the facts as recited here would be correct, but they are not the only possible conclusions that the jury can draw from all the evidence in the case. The jury may legitimately find that these appearances recited here were given for the purpose of making it appear that the defendants were not violating their agreements instead of their being bona fide aspects of a legitimate business.    If they are bona fide evidences, then the conclusions asked to be drawn here are correct. But it is not possible for the court, as a matter of law, to say that this is the only view that can be taken from the evidence in this case, and where it is possible for the jury to take a different view, and do that legitimately, it is only the jury that can pass on the question. There are some things in these points that could be affirmed, if they were not conjoined as they are conjoined, but in the manner in which the points are presented we must refuse them.    It is true that there can be no recovery in this joint action unless there is recovery against both.    We cannot say to you, as we are asked to do in the fourth point, that under all the evidence, your verdict should be in favor of the defendants.    For

reasons now given, and for reasons given in the general charge, we think the case must be submitted to the jury to ascertain what the facts are in the case, and that the court could not, as matter of law, say that there was no evidence that would testify a recovery in favor of the plaintiff. The points are, therefore, refused. The case is now in your hands. [1]

Verdict and judgment for plaintiff for $397. Defendant appealed.

*Error assigned* among others was (1) above instructions, quoting them.

*James S. Moorhead*, with him *Robert W. Smith*, for appellants.—We contend, in the first place, that there is not even a scintilla of evidence which makes the wife liable. It is true she frequently aided her husband in his grocery from the first, into which there came by his purchase or direction later, part of the product of the bakery. She performed all of the duties of his household and helped him at times besides. Can her estate be called upon to answer the plaintiff's demands in this suit: Darlington's App., 86 Pa. 512; Normile v. Osborne, 207 Pa. 367.

*Albert H. Bell*, with him *H. H. Fisher* and *J. Clarke Bell*, for appellees.

OPINION BY KEPHART, J., July 15, 1914:

The defendants, Peter Loetzbier and wife, were the owners of a bakery business and in 1906 sold it to Peter J. Becker. The agreement of sale contained a clause restricting the defendants from owning, engaging in or being employed by any other bakery shop in Scottdale, Pa., the clause in relation thereto being as follows: "It is hereby agreed and made part of this contract that Peter Loetzbier and Emma Loetzbier, his wife, shall not own, manage or be employed, or in

any manner, shape or form, be connected with or engaged in or by any bakery shop in Scottdale, Pa., or the vicinity of ten miles, for a period of ten years from the dating of this agreement." About two years after the sale to Becker and about one year after the plaintiff acquired the rights under this agreement, a grocery store and bakery shop were started. A wareroom connected these two buildings and all fronted on the same street. The defendants contend the grocery store was owned by Peter Loetzbier, one of the defendants, and the bakery shop was owned by the defendants' two children, aged fourteen and sixteen years; the product of the bakery was partially retailed through the grocery store; the wife, codefendant with Peter Loetzbier, attended to the business in the grocery store in addition to her ordinary household duties.

Shortly after the bakery shop was started, the plaintiff's business dwindled and continued to do so until she was forced, from the lack of sufficient trade, to close her store in 1911. This present action is to recover damages from February, 1909, to May, 1910, during a part of the time the rival shops were in operation. The evidence, it is admitted, was sufficient to establish a breach of this clause of the contract by Peter Loetzbier. Was the evidence of a breach of this clause of the contract by Mrs. Loetzbier sufficient to hold her; the defendants contending that as the agreement was joint, the breach of it must be a joint breach in order to hold the defendants liable?

The plaintiff's statement as filed sufficiently avers the breach of the contract either in managing, owning or being employed by the bakery complained of. The testimony for the plaintiff shows the manner in which the bakery was built; that Mrs. Loetzbier ran the grocery store, sold bread, etc., which was manufactured by this bakery; that the defendants owned a delivery wagon, which, at times, was in charge of the husband, and from which was distributed the bread to wholesale

customers within the prohibited district; and when Mrs. Loetzbier was notified to quit the bakery business, she said she "didn't have to quit business." Mrs. Loetzbier's statement, detailing the daily progress of the new bakery and describing the sales of bread, cakes, etc., shows her knowledge of the business and her constant employment in the sales department. of the grocery store and the bakery, and from her testimony there is sufficient to lead one to believe that she had an interest in the bakery. When she testifies "we thought that was done," we were "out of that" agreement, "I think we had a right to go into business," this seemed to indicate the real state of mind of the defendants and what they did was pursuant to this thought. We need not review the evidence extensively. The court committed no error in submitting to the jury the question of her employment, her interest in the bakery shop, and her interest in the grocery business, which, joined with her husband's admitted wrongful acts, was a violation of the contract under consideration.

Clauses of contracts containing language similar to the one in this case, have been passed upon frequently: Erie County Milk Association v. Ripley, 18 Pa. Superior Ct. 28; Philadelphia Base Ball Club v. Lajoie, 202 Pa. 210; Philadelphia Towel, etc., Co. v. Weinstein, not yet reported. The purpose of the contract was to eliminate competition which would be harmful, should the defendants continue the business, by reason of their skill, experience and knowledge of the customers and bakery business generally. One of the assets of the defendants was their skill as bakers and this they partially sold. As was said in Smith's App., 113 Pa. 579. "The principle is this: public policy requires that every man shall not be at liberty to deprive himself or the state of his labor, skill or talent, by any contract that he enters into. On the other hand, public policy requires that when a man has, by skill or by any other means, obtained something which he wants to sell, he should be at liberty

to sell it in the most advantageous way in the market; and in order to enable him to so sell it, it is necessary that he should be able to preclude himself from entering into competition with the purchaser. In such case the same public policy enables him to enter into any stipulation, however restrictive it is, provided the restriction, in the judgment of the court, is not unreasonable, having regard to the subject-matter of the contract." In that case the court held that where a man engages as a foreman or superintendent for another in violation of his contract, the courts would enjoin his further services within the prohibited district.

The term "bakery shop," as used in this agreement, includes not only the acts of making the bread and selling it, but of selling the product manufactured by others; either in a shop especially set up for that purpose or through a place where other articles of commerce are sold, or peddling it without having an established place. This is the spirit of the agreement.

We realize the duty which devolves on the wife by reason of her marital relationship, quoted by defendants from Mr. Justice Trunkey's opinion in Darlington's App., 86 Pa. 512. Her assistance in the manner averred by the defendants would not ordinarily affect her separate estate; but this duty of the wife cannot be made a cloak with which to cover the wrong arising from the breach of her own contract. Both wife and husband, when they made their joint contract binding themselves to a certain rule of conduct toward particular persons, must see to it that their future acts be such as to do no harm to the persons their contract safeguarded. The sale of the bakery was a joint one, and they voluntarily bound themselves to a course of future conduct which takes their ordinary acts out of the rules governing domestic life; and therefore, for the time being, and in the locality specified, and to the persons specified, they are bound by a law of their own creation. As to these particular persons this duty rises higher than the ordinary

rules of obedience governing domestic life; when the acts, done as contended for by the defendants, work injury to the covenantors, or their assigns, marital obligations will not relieve them; as between the wife and her covenantor, her acts, joined with her husband, were willful, deliberate and her own. No other rule would render contracts of this nature safe.

The plaintiff is entitled to protection against the acts of the defendants and those associated with them, where the legitimate consequences of their acts, though well intended, are to do violence to the agreement to which they themselves were bound to abide. The re-establishment of this business in the name of the covenantors' sons, coupled with the evidence as to the part which the defendants took in the handling of the business, the age of the children and their knowledge of business matters, is a very thin covering to conceal the real interest of the covenantors. The jury was amply warranted in finding from the evidence a verdict against both of the defendants.

The assignments of error are overruled and the judgment affirmed at the cost of the appellants.