## Weirmuller v. Stone et al.

*Equity — Specific performance — Injunction — Contract for personal service—Mutuality.*

1. A contract by which a professional boxer of special knowledge, skill and ability in his profession contracts with another person that the latter shall be his exclusive manager for a stated term of years will be enforced by injunction against the boxer if he attempts to engage another manager.

2. Where such a contract provides for a division of the proceeds of exhibitions on a percentage basis, and it has been partially performed, a court of equity will not refuse to enforce it on the ground that it lacks mutuality.

*Contracts—Minor—Ratification.*

3. A contract made by a boxer with his manager when he was under age will be deemed to have been ratified by him if it appears that one year after he became of age he held an exhibition with advertisements which set forth his own name and the name of his manager as such.

Bill, answer and proofs. C. P. No. 1, Phila. Co., Dec. T., 1922, No. 7852, in Equity.

*Morelli, Guerin & Gain,* for plaintiff.

*J. H. Lieberman* and *B. D. Oliensis,* for defendants.

McDEVITT, J., May 16, 1923.—The plaintiff, who for a number of years has been engaged in the business of managing boxers and procuring engagements for professional exhibitions by such boxers for a valuable consideration to them paid, filed his bill against the defendants, alleging that on Jan. 23, 1922, the defendant, Adam Stone, entered into a contract with the plaintiff, providing, *inter alia,* that the plaintiff, for a period of five years from its date, should be the exclusive manager for the defendant, Adam Stone, that no other person or persons should act, manage or solicit engagements for the defendant, Adam Stone, and that all dates and exhibitions should be solicited, made and had only by the plaintiff; that notwithstanding this, the defendant, Adam Stone, subsequently, on or about Jan. 30, 1923, entered into a contract for ten years with the defendant, Louis Sugarman *(alias* Lou Segal), to engage in professional boxing exhibitions under the latter's management. The bill prayed for an injunction restraining the defendant, Adam Stone, from engaging or participating in any public or private boxing exhibition except such as should be arranged by the plaintiff; that any alleged contract entered into between the defendant, Adam Stone, and the defendant, Louis Sugarman *(alias* Lou Segal), should be declared null and void; and that defendant, Sugarman *(alias* Segal), be restrained from soliciting or arranging any engagement for an exhibition or contest of the boxing ability of the defendant, Adam Stone.

The case was argued by counsel upon bill, answer and proofs.

The defendants urged that the plaintiff was not entitled to the relief prayed for, because—

1. *(a)* The services of the defendant, Adam Stone, do not consist of such special knowledge, skill and ability which, in case of default, could not easily be obtained from others. *(b)* The contract between plaintiff and defendant, Adam Stone, is lacking in mutuality.

2. The defendant, Adam Stone, was a minor when the contract was entered into, and it was never ratified by him after reaching his majority.

In Pomeroy on Specific Performance, cited with approval in Ball Club *v.* Lajoie, 202 Pa. 210, 216, this principle is stated: "Where one person agrees to render personal services to another, which require and presuppose a special

knowledge, skill and ability in the employee, so that, in case of a default, the same service could not easily be obtained from others, although the affirmative specific performance of the contract is beyond the power of the court, its performance will be negatively enforced by enjoining its breach. . . . The damages for breach of such contract cannot be estimated with any certainty, and the employer cannot, by means of any damages, purchase the same service in the labor market."

It was testified that the defendant, Adam Stone, has "very, very good" ability as a boxer; that this ability, coupled with plaintiff's skill as a manager, resulted in the success of the defendant, Adam Stone, in fifteen bouts, and within one year Stone's earning power for a single engagement increased from $175 to $2000. He has become well known in boxing circles, where he has attained an enviable reputation and has become quite an attraction.

The court feels that the evidence in this case justifies the conclusion that the services of the defendant are of such a unique character and display such a special knowledge, skill and ability as renders them of peculiar value to the plaintiff and so difficult of substitution that their loss will produce irreparable injury, in the legal significance of that term, to the plaintiff. It is a well recognized sporting axiom that fighters are born, not made, and a manager fortunate enough to direct this natural ability along profitable channels should not be deprived of it.

The action of the defendant, Adam Stone, in violating his contract is a breach of good faith for which there would be no adequate redress at law, and the case, therefore, properly calls for the aid of equity in negatively enforcing the performance of the contract by enjoining its breach: Ball Club v. Lajoie, 202 Pa. 210 (1902).

Defendants also contend that the contract between the plaintiff and the defendant, Adam Stone, was lacking in mutuality. Perhaps the exchange of brain for brawn is not reciprocity in defendants' minds, but it is in the opinion of the court.

The contract between the plaintiff and the defendant, Adam Stone, provides that any sum received for pugilistic exhibitions shall be paid in the proportion of 33⅓ per cent. to the plaintiff and 66⅔ per cent. to the defendant, Adam Stone, less certain expenses.

This division of proceeds was later modified so that the defendant, Louis Sugarman (alias Lou Segal), should receive a certain percentage of the receipts, the plaintiff contributing 10¾ per cent. and the defendant, Stone, contributing 8¾ per cent.

The contract also provides that in case of any breach or violation of its conditions by Stone, the party of the second part, he shall be restrained by permanent injunction.

These clauses were knowingly accepted by the defendant, Stone, and such acceptance was made part of the inducement for the plaintiff to enter into the contract. There is the further fact that the contract has been partially executed by services rendered and payment made therefor, so that the situation is not now the same as when the contract was wholly executory. The relation between the parties has been so far changed as to give to the plaintiff an equity arising out of the part performance, to insist upon the completion of the agreement according to its terms by the defendant. This equity may be distinguished from the original right under the contract itself, and it might well be questioned whether the court would not be justified in giving effect to it by injunction, without regard to the mutuality or non-mutuality in the original contract. The plaintiff has so far performed his part of the contract

3 D. & C.

in entire good faith in every detail, and it would, therefore, be inequitable to permit the defendant to withdraw from the agreement at this late day.

In the case before us, the defendant, Stone, sold to the plaintiff for a valuable consideration the exclusive right to his professional services for a stipulated period. Why should not a court of equity protect such an agreement until it is terminated? The court cannot compel the defendant, Stone, to box for the plaintiff, any more than it can compel a song bird to sing or an actor to act, but it can restrain him from boxing for any one else in violation of his agreement.

The defendants argue that this should not be done because the contract lacks mutuality; but to this it may be answered that the defendant, Stone, has the possibility of enforcing all the rights for which he stipulated in the agreement, which is all that he can reasonably ask: Ball Club *v.* Lajoie, 202 Pa. 210.

And should the defendant feel that the plaintiff was not making an honest effort to match him, does counsel feel that any court of equity would deny an application for rescission, even though the remedy were not provided by specific language in the contract?

While "equity implies an intention to fulfill an obligation," at the same time equity holds there is "no right without a remedy."

Defendants' final contention is that the defendant, Adam Stone, was a minor when the contract was entered into, and it was never ratified by him after reaching his majority.

1 Williston on Contracts, 463, says: "If, as has been previously suggested, an infant's contract is valid until avoided, ratification does not, strictly speaking, create a right against the infant, but merely terminates the privilege which the law allows him of avoiding a bargain he made while under age. Ratification cannot be effectually made until after the infant has come of age. From that time, however, any manifestation by him of an intent to regard the bargain as binding will deprive him of his privilege. Therefore, if an infant, after coming of age, sells, uses or even retains for an unreasonable time goods received by him during infancy under a contract, he cannot thereafter avoid the bargain. Still more clearly, if the infant, after attaining his majority, receives performance in whole or in part from the other party to the contract, there is a ratification."

It was shown by the testimony that Stone had, on more than one occasion, made affidavit to his age, according to which affidavits he had attained his majority at the time of executing the contract with the plaintiff; but even assuming that he did not reach twenty-one years of age until Sept. 22, 1922, as testified at the hearing in this cause, there was sufficient evidence to infer ratification from failure to disaffirm within a reasonable time after coming of age, as well as from positive recognition of the contract.

In the case at bar, plaintiff is not compelled, however, to rely upon an implied ratification from Stone's failure to disaffirm. On the contrary, on the very anniversary of his birth, he engaged in a boxing contest arranged for him by plaintiff, and thereafter he engaged in four other bouts, the last Jan. 15, 1923, all matches having been made for him by plaintiff, and for one of them, namely, that of Jan. 5, 1923, he placed his name and seal, approving the contract, under those of "Chas. Weirmuller, Manager of Ad Stone."

Realizing the position which he legally occupied by reason of the aforesaid five separate, distinct and positive acts of affirmance, defendant, Stone, attempted to assert at the preliminary hearing that the five bouts were made

for him under a special arrangement, alleged to have been made in the early part of October, 1922. It was obviously necessary to have the arrangements take place then, so that too great a time might not seem to have elapsed between his attaining his majority and the making of the alleged new oral contract. Unfortunately, however, both defendants identified the alleged occurrence as having taken place after Stone's discharge from the Marine Corps (testimony, pages 59, 71, 72), and, as a matter of fact, Stone was not discharged from the Marine Corps until Nov. 27, 1922.

Stone, also, in his letter of Jan. 23, 1923, written by defendants' counsel, after a full disclosure of all his relations with plaintiff, expressly refers to and recognizes the existence of his original written contract of Jan. 23, 1922, and makes absolutely no reference to any special arrangements different from those contained in the original contract.

Substantial justice between the parties requires that the court should restrain the defendant, Adam Stone, until Jan. 23, 1927, from engaging in or in any way participating in any public or private boxing exhibition or exhibitions, or other display of his pugilistic skill or entertainment capitalizing his boxing skill, whether for a valuable consideration or gratis, and whether in competition or otherwise, except such as shall be solicited, obtained, arranged and approved by complainant.

The maxims, "he who comes into equity must do so with clean hands" and "he who seeks equity must do equity," apply to the defendants, who seek to prevent the equitable discharge of a valid agreement made in good faith by both parties and executed in the same spirit by plaintiff.

Equity, in the realm of sports, is represented by good sportsmanship and fair play. The plaintiff took his risk when he purchased the exclusive services of defendant, Stone, and the latter early reaped his harvest from keen judgment and farsighted business acumen on the part of the plaintiff. The plaintiff does not contend that Stone is the sun in the boxing firmament, but he certainly has been proven a bright, particular star.

Should a sinister influence, encouraged by apparent greed for large profits within easy reach, be permitted to destroy the moral sense of a professional boxer not yet wearing the diadem of his chosen field of livelihood, when, next to ability, character is the prime requisite of such a performer? It is for the best interest of public policy that honesty, decency and fair dealing be enforced in the squared circle by equity and justice, as well as the Marquis of Queensbury rules.

Contracts are not to be entered into lightly or flippantly or cast aside casually at the pleasure of one of the parties. And it matters not whether notice of cancellation or rescission be couched in the highly technical language of an attorney or in the vocabulary of the prize-fighter. The language of the contract controls. If the courts will restrain contract jumpers, they will also restrain the larceny, by design or temptation, of the services of those specially skilled in the arts, sciences or professions. Plaintiff's acquiescence to increasing the wages of Sugarman (*alias* Segal) might well be viewed as pampering a temperamental person, for leaders of sports, as artists, are temperamental. A contented mind is essential to proper concentration on the work necessary to accomplish a difficult task, even though it be the sending to the resin of a worthy antagonist in a battle of fisticuffs.

Upon a careful consideration of the whole case, the court is of opinion—

That the services of the defendant, Adam Stone, consist of special knowledge, skill and ability which, in case of default, could not easily be obtained from others.

3 D. & C.

That the contract between the plaintiff and the defendant, Adam Stone, is not lacking in mutuality.

That the preponderance of evidence would indicate that Stone attained his majority at the time the contract in suit was executed, but, in any event, it was ratified after the date set by him, at the hearing in this matter, as the twenty-first anniversary of his birth.

That any alleged contract, oral or written, or any other understanding or agreement in the nature thereof, heretofore entered into between defendant, Adam Stone, and defendant, Louis Sugarman, be declared fraudulent, null and void.

That defendant, Louis Sugarman (*alias* Lou Segal), be restrained, during the continuance of complainant's contract with defendant, Adam Stone, dated Jan. 23, 1922, to wit, until Jan. 23, 1927, from making, arranging, soliciting or obtaining, and from attempting to make, arrange, solicit or obtain, any contract, engagement, date or otherwise for an exhibition, public or private, whether for a valuable consideration or gratis, of the boxing skill and ability of the defendant, Adam Stone, whether in competition or otherwise.

An injunction is granted accordingly, preliminary until final hearing.