## Edelstein v. Lambert

*Alvin S. Ackerman,* for plaintiff.

*Vram Nedurian, Jr.,* for defendants.

SWENEY, P. J., May 29, 1961.—We granted a preliminary injunction against defendants, after rule to show cause and hearing. An appeal has been taken to the Superior Court and transferred to the Supreme Court. Pursuant to rule of court, we file this opinion.

Jack Edelstein and his wife, Clara Edelstein, plaintiffs here, entered into a written agreement with defendants on February 15, 1954, whereby the Edelsteins purchased the good will, stock and fixtures of defendants' bakery, located in defendants' building at No. 679 Long Lane, Upper Darby, this county. The agreement contained the provisions that the Edelsteins should

lease said building from defendants for a 10-year term, with an option to purchase said property; that the Edelsteins should register under the Fictitious Names Act as "Lambert Bakery," and, as set forth in paragraph 10 that: "10. It is further understood and agreed by and between the parties that the SELLERS will not engage, directly or indirectly in the bakery business in Upper Darby Township for and during the term of the lease, or any extension thereof."

The following facts are admitted: Jack Edelstein is now deceased; in 1958, defendants lost their property by sheriff's sale and the property was bought by plaintiff; a lease, under the terms of the agreement, was executed between the parties and was abrogated by the sheriff's sale; no rent, under the lease, was paid after the sale; defendant, Louis G. Lambert, is engaged in the bakery business within the Township of Upper Darby and is using his name to attract customers; he is employed by Saint Albans Bakery in a store at the "Bazaar of All Nations" and has a sign on the store premises reading "Lambert Famous Cinnamon Buns and German Cheese Cake" and, a 10-year period has not passed since the written agreement of February 15, 1954.

The legal question before us is whether the agreement of February 15, 1954, forbids Lambert from his current activities in the bake shop at the Bazaar.

The provisions in the written agreement that defendants would not engage in the bakery business for a period of 10 years within the Township of Upper Darby, is a reasonable one, and normally would be sustainable without question. See Kuhns v. Loetzbier, 58 Pa. Superior Ct. 148-52 (1914). The question arises, however, whether the provision itself is enforceable, since by its terms such restriction is "for and during the term of the lease, or any extension thereof," and

plaintiff became the owner, not the lessee of the premises in 1958.

The chancellor was of the opinion that it was without question the intention of the contracting parties to exclude defendants from engaging in the bakery business in return for the purchase of the good will and appurtenances to the premises, and that reference to a 10-year term by specific mention of the lease agreement to be executed spelled out the contemplated term of restriction.

Of course, a tenant may purchase the property of his landlord at sheriff's sale and thereby extinguish the lease: Warner Bros. Theatres, Inc., v. Proffitt, 329 Pa. 316, 320. Also, there is an ingrained principle of law that a party will not be permitted to take advantage of his own act to work for a forfeiture of his contract: Cerbo v. Carabello, 376 Pa. 571 (1954).

We have a feeling that defendants allowed the sale of their property by the sheriff so that they might avoid the restrictive agreement of their contract. It is understood, of course, that, at final hearing, testimony may change the chancellor's point of view, but the preliminary injunction was issued here because the chancellor was of the opinion that the time limit of 10 years, fixed by the lease, was a reasonable time to restrict defendants from engaging in the bakery business.

The chancellor in his discretion allowed the preliminary injunction, pending proof that the loss of the property was not a willful, deliberate act on the part of defendants to enable them to circumvent their solemn promise contained in the agreement of February 15, 1954. To rule otherwise would defeat the clearly expressed intention of the parties and allow defendants to profit by their own financial dilemma or cleverness to cut short the term of a written obligation.