## Philadelphia Hockey Club, Inc. v. Flett

*Gilbert Stein*, for plaintiff.

*Howard Casper*, for defendant.

HIRSH, J., June 27, 1972.—

### STATEMENT OF THE ISSUES

This case involves the contractual relationship between plaintiff, Philadelphia Hockey Club, Inc., a member team of the National Hockey League, and defendant, one of the hockey players on plaintiff's team.

The issue involved is whether plaintiff has the contractual right to the exclusive services of defendant as a hockey player until September 30, 1975.

### FINDINGS OF FACT

1. Defendant is a professional hockey player, possessed of special knowledge, skill and ability in the game of hockey.

2. Plaintiff is the owner of a professional hockey

team, known as the Philadelphia Flyers, which is one of the member teams in the National Hockey League.

3. On August 9, 1971, defendant contracted with another team in the National Hockey League, the Los Angeles Kings, to play hockey exclusively for said team.

4. On January 28, 1972, the Los Angeles Kings assigned defendant's contract to plaintiff, pursuant to the provisions of the contract permitting the Kings to "trade" defendant.

5. Pursuant to said contract, defendant reported to plaintiff after the "trade," and thereafter played hockey exclusively for plaintiff until the conclusion of the 1971-72 playing season on April 1, 1972, and plaintiff made all payments due to defendant under the contract and has continued to date to make said payments.

6. One of the provisions of the contract requires defendant, at plaintiff's request, to enter into a new contract with plaintiff for the ensuing playing season under the same terms and conditions except for salary which is to be negotiated.

7. Pursuant thereto, plaintiff and defendant entered into a contract on June 17, 1972, requiring defendant to play hockey exclusively for plaintiff for a term commencing October 1, 1972, and terminating September 30, 1975.

8. In the meantime, on May 16, 1972, defendant executed an alleged "employment agreement" with the New York Raiders team in the World Hockey Association, the terms of which would require defendant to play hockey for the Raiders from October 1, 1972, to September 30, 1975.

9. One of the provisions of the New York agreement was that said agreement would be null and void if New York failed to deliver to defendant's lawyer on or before

June 16, 1972, a guarantee of defendant's first year salary, in the form of a bank letter of credit, or other acceptable guarantee, in the amount of $50,000.

10. As of midnight on June 16, 1972, the only thing which had been delivered to defendant's lawyer was a letter dated May 24, 1972, promising to deliver a $50,000 certificate of deposit to the lawyer, provided an agreement were first signed by the lawyer, the terms of which were not disclosed.

11. Subsequent to June 17, 1972, the president of the New York Raiders wrote to defendant's lawyer claiming the New York Raiders' contract was valid, and insisting that defendant report to the New York Raiders' hockey training camp.

12. Defendant is aware of the conflicting claims and has not irrevocably made up his mind not to report to New York's training camp.

13. Because of defendant's special skill, knowledge and ability as a hockey player, plaintiff cannot replace him on its team, should defendant fail to play for plaintiff.

14. There is no way of ascertaining in monetary terms how plaintiff could be compensated for the loss of defendant's services.

## DISCUSSION OF LAW

Much has been said about the validity of the so-called "reserve" or "option" clauses in sports contracts which require an athlete to contract for a new term with his team at the expiration of his playing contract.

It can be argued that the option provision in paragraph 17 of the contract between plaintiff and defendant could have a self-perpetuating effect which might bind defendant to plaintiff forever.

However, we need not address ourselves to that problem, since (1) defendant has not complained of

its oppressive effect, having, in fact, voluntarily complied with its requirements in the instant case, and (2) in any event, the only consecutive options which would be construed as being involved in this case would be those extending the contract an additional three years, clearly a reasonable extension. See Martinelli v. Dougherty, 4 D. & C. 2d 315 (1955), where the court, on complaint of an employe who felt oppressed by a 40-year consecutive option clause, modified the term down to five years.

Since the option contained in the current agreement was valid, and its successor options would have been so for at least an additional three years, and defendant voluntarily entered into a new three-year contract with plaintiff pursuant thereto, such new contract was validly entered into by the parties.

What, then, of the New York Raiders' alleged contract? Although it would appear that the Raiders' contract became null and void due to the failure of the Raiders to deliver the $50,000 guarantee by June 16, 1972, the Raiders are not a party to this action and, consequently, have not had the opportunity to present its side of that story. We, therefore, leave it to the New York Raiders to adjudicate in the appropriate jurisdiction the question of whether it complied or failed to comply with the $50,000 condition subsequent. In either event, it is not relevant to this case.

Here, we are concerned only with the validity of a contract being performed in Pennsylvania, and a new contract entered into in Pennsylvania to be performed in Pennsylvania. As discussed previously, both are valid and enforceable.

Although no actual breach has as yet occurred, defendant's execution of the New York Raiders' contract was an anticipatory breach, manifesting an intention to commit a breach of his contract with

plaintiff, and, although his conduct since executing the Raiders' contract has indicated a change of heart, there is confusion in the record as to whether he has totally repudiated that anticipatory breach.

In such circumstances, equity has the power to restrain defendant from playing hockey for anyone other than plaintiff during the term of the contract. See Philadelphia Ball Club Limited v. Lajoie, 202 Pa. 210 (1902).

## CONCLUSIONS OF LAW

1. The parties have a valid contract, one of the terms of which requires defendant to enter into a new contract with plaintiff to play hockey exclusively for plaintiff during the playing season commencing October 1, 1972, under the same terms and conditions as the present contract, except for salary.

2. Pursuant thereto, the parties on June 17, 1972, entered into a valid new contract for a term commencing October 1, 1972, and terminating September 30, 1975, requiring defendant to play hockey exclusively for plaintiff during said period.

3. On May 16, 1972, defendant executed an alleged contract with the New York Raiders hockey team, the provisions of which require defendant to breach his aforesaid contractual obligations to play hockey exclusively for plaintiff.

4. Such breach would cause irreparable damages to plaintiff, which damages are incapable of definite measurement.

5. The services of defendant, contracted for by plaintiff, are unique services of special merit which are of peculiar and particular value to plaintiff.

6. Plaintiff has no adequate remedy at law for said breach.

7. Defendant's execution of the New York Raiders'

contract constituted a breach of the present contract between the parties.

8. Defendant's execution of the New York Raiders' contract and his subsequent refusal to irrevocably repudiate that contract constitutes an anticipatory breach of the contract between the parties which is to take effect on October 1, 1972, and raises a cloud of uncertainty as to defendant's future intentions.

9. Plaintiff is entitled to injunctive relief, restraining defendant from participating in hockey training camp and playing hockey for anyone other than plaintiff up to and including September 30, 1975.

### DECREE NISI

Wherefore, it is hereby ordered and decreed as follows:

Defendant William M. Flett, a/k/a Bill Flett, is enjoined and restrained from participating in hockey training camp or playing hockey for anyone other than the Philadelphia Hockey Club, Inc., from the date of this decree up to and including September 30, 1975, except as otherwise ordered by this court.