## MADISON SQUARE GARDEN CORPORA-TION, ILL., v. CARNERA.

### No. 440.

Circuit Court of Appeals, Second Circuit.
July 21, 1931.

George Sylvester, of New York City, for appellant.

Chadbourne, Stanchfield & Levy, of New York City (George W. Whiteside and Horace G. Hitchcock, both of New York City, of counsel), for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

On January 13, 1931, the plaintiff and defendant by their duly authorized agents entered into the following agreement in writing:

"1. Carnera agrees that he will render services as a boxer in his next contest (which contest, hereinafter called the 'First Contest,' shall be with the winner of the proposed Schmeling-Stribling contest, or, if the same is drawn, shall be with Schmeling, and shall be deemed to be a contest for the heavyweight championship title; provided, however, that, in the event of the inability of the Garden to cause Schmeling or Stribling, as the case may be, to perform the terms of his agreement with the Garden calling for such contest, the Garden shall be without further liability to Carnera, exclusively under the auspices of the Garden, in the United States of America, or the Dominion of Canada, at such time, not, however, later than midnight of September 30, 1931, as the Garden may direct.

"2. The Garden shall give notice to Carnera, at least ninety (90) days before the holding of such First Contest, of the time and place at which it is to be held. In the event that rain or weather conditions or other causes over which the Garden and/or Carnera have no control compel the postponement of the aforesaid First Contest, the Garden shall designate a postponed date or a further postponed date (in no event to be later than said September 30, 1931), if required for said reasons, and Carnera thereupon and in such even will engage in such contest upon such ultimate postponed date.

"3. Such First Contest shall be conducted in conformity with the rules and regulations established by the controlling Official State Athletic Commission or official authorities in the State or Province where such boxing contest shall be held, and all conditions and regulations for such contest not yet enacted or in force at the time of the execution and delivery hereof or not definitely stipulated shall be subject to the Garden's approval.

"4. The Garden shall pay to Carnera for his said services in said First Contest an amount equal to twelve and one-half per cent. (12½%) of the gate receipts from all tickets sold, after deduction of State and Federal admission taxes on tickets and the

fees to officials as designated by the Commission or authorities controlling. Amounts due hereunder shall be paid to Carnera in due course upon the checking of the gate receipts, but in no event later than five (5) days from and after the date of the holding of such First Contest.

"5. The Garden in advertising the First Contest and in the motion pictures hereinafter referred to shall be entitled to use Carnera's name and picture.

"6. The Garden shall have, subject to the provisions hereof, and in so far as Carnera is concerned, the sole and exclusive motion picture rights of said First Contest, or of any part thereof, and is hereby authorized and empowered to dispose of the same in such manner as it may deem desirable, provided, however, that Carnera shall be paid a sum equal to twelve and one-half per cent. (12½%) of all moneys derived by the Garden from the disposition thereof. Carnera shall have the right to two days' notice before any such disposition, and shall have the right to acquire the same within two days thereafter, for the price then offered by others.

"7. Carnera shall, upon reasonable written notice to him from the Garden, execute and deliver, or cause his manager to execute and deliver for and on his behalf, the usual form of boxer's contract required by the controlling Commission or authorities for such First Contest, and to such end hereby makes, constitutes and appoints the then President of the Garden as and for his agent and attorney-in-fact for him and in his name, to execute and deliver such usual form of boxer's contract. The execution and delivery of such usual form of boxer's contract shall not be deemed to affect, abrogate or change the terms hereof with respect to matters covered hereunder.

"8. In the event that Carnera wins the First Contest, then and in such event Carnera grants an option to the Garden for his services as a boxer in his thereafter contests so long as he continues winner thereof, to be held exclusively under the auspices of the Garden, upon the same terms and conditions as herein provided, excepting the percentage applicable to such Contests shall be thirty-seven and one-half per cent. (37½%) instead of twelve and one-half per cent (12½%), and the opponent in such contests shall be such as may be approved of by the Garden. Such option shall continue so long as the Garden continues to arrange a contest for Carnera when Carnera shall desire such contest, but in no event closer than thirty days apart, it being understood that should the Garden not so arrange a contest, the option shall end.

"9. Carnera shall not, pending the holding of the First Contest, render services as a boxer in any major boxing contest, without the written permission of the Garden in each case had and obtained. A major contest is understood to be one with Sharkey, Baer, Campolo, Godfrey, or like grade heavyweights, or heavyweights who shall have beaten any of the above subsequent to the date hereof. If in any boxing contest engaged in by Carnera prior to the holding of the First Contest, he shall lose the same, the Garden shall at its option, to be exercised by a two weeks' notice to Carnera in writing, be without further liability under the terms of this agreement to Carnera. Carnera shall not render services during the continuance of the option referred to in paragraph 8 hereof for any person, firm or corporation other than the Garden. Carnera shall, however, at all times be permitted to engage in sparring exhibitions in which no decision is rendered and in which the heavyweight championship title is not at stake, and in which Carnera boxes not more than four rounds with any one opponent.

"10. The Garden shall have the right in whole or in part, at its option, to assign this agreement and the benefits subject to the obligations thereof, to any of its subsidiary or affiliated corporations, or to any person, firm or corporation of equal responsibility, and shall have the right, at its option, of causing any contests herein referred to be promoted by any such subsidiary or affiliated corporations, or by any persons, firm or corporation, provided, however, that the Garden shall at all times remain liable hereon to Carnera.

"11. This agreement shall not be considered to be a partnership or joint venture."

Thereafter the defendant, without the permission of the plaintiff, written or otherwise, made a contract to engage in a boxing contest with the Sharkey mentioned in paragraph 9 of the agreement above quoted, and by the terms thereof the contest was to take place before the first contest mentioned in the defendant's contract with the plaintiff was to be held.

The plaintiff then brought this suit to restrain the defendant from carrying out his contract to box Sharkey, and obtained the preliminary injunction order, from which

this appeal was taken. Jurisdiction is based on diversity of citizenship and the required amount is involved.

The District Court has found on affidavits which adequately show it that the defendant's services are unique and extraordinary. A negative covenant in a contract for such personal services is enforceable by injunction where the damages for a breach are incapable of ascertainment. Keith v. Kellerman (C. C.) 169 F. 196; Cincinnati Exhibition Co. v. Marsans (D. C.) 216 F. 269; Philadelphia Ball Club v. Lajoie, 202 Pa. 210, 51 A. 973, 58 L. R. A. 227, 90 Am. St. Rep. 627; Williston on Contracts § 1450.

The defendant points to what is claimed to be lack of consideration for his negative promise, in that the contract is inequitable and contains no agreement to employ him. It is true that there is no promise in so many words to employ the defendant to box in a contest with Stribling or Schmeling, but the agreement read as a whole binds the plaintiff to do just that, provided either Stribling or Schmeling becomes the contestant as the result of the match between them and can be induced to box the defendant. The defendant has agreed to "render services as a boxer" for the plaintiff exclusively, and the plaintiff has agreed to pay him a definite percentage of the gate receipts as his compensation for so doing. The promise to employ the defendant to enable him to earn the compensation agreed upon is implied to the same force and effect as though expressly stated. E. I. Du Pont de Nemours Co. v. Schlottman (C. C. A.) 218 F. 353; Mills-Morris Co. v. Champion Spark Plug Co. (C. C. A.) 7 F.(2d) 38; Wood v. Lucy, Lady Duff-Gordon, 222 N. Y. 88, 118 N. E. 214. The fact that the plaintiff's implied promise is conditioned, with respect to the contest with the winner of the Stribling-Schmeling match, upon the consent of that performer, does not show any failure of consideration for the defendant's promise. Gutlon v. Marcus, 165 Mass. 335, 43 N. E. 125.

As we have seen, the contract is valid and enforceable. It contains a restrictive covenant which may be given effect. Whether a preliminary injunction shall be issued under such circumstances rests in the sound discretion of the court. Engemoen v. Rea (C. C. A.) 26 F.(2d) 576; North Fork Water Co. v. Medland (C. C.) 187 F. 163; Shubert v. Woodward (C. C. A.) 167 F. 47, 54. The District Court, in its discretion, did issue the preliminary injunction and required the

plaintiff as a condition upon its issuance to secure its own performance of the contract in suit with a bond for $25,000 and to give a bond in the sum of $35,000 to pay the defendant such damages as he may sustain by reason of the injunction. Such an order is clearly not an abuse of discretion.

Order affirmed.