Ciriaco ARIAS, Plaintiff,

v.

Julian SOLIS, J. Russell Peltz and
Peltz Boxing Promotions, Inc.,
Defendants.

No. CV–90–4443 (ADS).

United States District Court,
E.D. New York.

Jan. 8, 1991.

Steven Sarshik, Garden City, N.Y. (Louis Rosenstock, of counsel), for plaintiff.

Roemer & Featherstonhaugh, P.C., New York City (Christopher M. Houlihan, Anthony Giardina, of counsel), for defendants.

## OPINION AND ORDER

SPATT, District Judge.

Pursuant to an order to show cause signed by Judge Edward R. Korman on December 26, 1990, plaintiff, a boxing manager, moves for a preliminary injunction to enjoin the defendant, Julian Solis, a professional boxer, from engaging in any boxing exhibitions, in particular a boxing match presently scheduled for Tuesday evening, January 8, 1991 with one Calvin Grove, without first obtaining the express prior approval and consent of the plaintiff pursuant to the contract between the parties.

## FACTUAL BACKGROUND

Plaintiff Ciriaco Arias ("Arias"), is a boxing manager licensed by the New York State Athletic Commission. Defendant Julian Solis ("Solis"), is a professional boxer who was at one time the bantamweight champion of the world in the early 1980's.

Arias and Solis entered into a two-year contract on April 2, 1990 for Arias to act as a boxing manager for Solis ("Management Contract"). The contract is a standard one-page "Boxer–Manager Contract", filed with and approved by the New York State Athletic Commission ("NYAC"). The contract provides, in relevant part, as follows:

"**THIRD:** The Boxer hereby agrees to render boxing services, including training, sparring, and boxing in exhibitions and contests at such times and places as designated by the Manager.

**FOURTH:** The Manager hereby agrees to use his best efforts to provide adequate training for the Boxer, and to se- cure for the Boxer, reasonably remunerative boxing contests and exhibitions against fighters of similar qualifications or skill.

**FIFTH:** The Boxer hereby agrees not to actively participate in any sparring or boxing exhibitions, contests, or training exercises, except as specifically approved or required by the Manager.

\*     \*     \*     \*     \*     \*

**EIGHTH:** It is understood and agreed by both parties that the services of the Boxer as provided herein are extraordinary and unique."

In accordance with the NYAC regulations, the contract further provides that Arias is to receive one-third of any monies earned by Solis.

Arias contends that he arranged for Solis to partake in several fights throughout 1990, but Solis thereafter refused or failed to participate in the fights. Arias also contends that despite the existence of the above contract, Solis entered into a separate agreement with a boxing promoter, defendant Peltz Boxing Promotions, Inc. and J. Russell Peltz (collectively "Peltz"), for Arias to fight Calvin Grove in Philadelphia on January 8, 1991 ("the Grove Bout").

It is undisputed that Solis entered into the Grove Bout agreement with the defendants in contravention of the express terms of the Management Contract, since he did not first obtain the approval of Arias. However, Solis has agreed to pay Arias his share of the purse due under the Management Contract from the Grove Bout.

Arias commenced this action seeking damages for breach of contract and a permanent injunction to enjoin Solis from participating in any exhibitions without the prior consent of Arias. In addition, Arias is suing Peltz for intentionally inducing Solis to breach his contract with Arias, and for interference by Peltz with his contractual relationship with Solis. Arias alleges that he has sustained damages by reason of the breach of contract by Solis since Arias has expended money to train Solis and in scheduling the various fights which

Solis never fought. Arias also contends that Solis is not qualified to fight Calvin Grove; it would be detrimental to his career if he did so; and this fight would endanger the career of Solis thereby depriving Arias of income under the Management Contract.

Arias bases federal jurisdiction on diversity under 28 U.S.C. § 1332(a), and claims damages of $150,000 in the complaint.

The defendants oppose this application on three grounds: First, there is no diversity jurisdiction since the plaintiff has failed to meet the threshold amount of $50,000. Second, the Court lacks personal jurisdiction over the Peltz defendants. Third, the plaintiff has failed to meet the traditional elements for obtaining a preliminary injunction in this Circuit.

This Court held oral argument on Friday, January 4, 1991, which argument was continued on Monday, January 7, 1991. Although the Court read this decision into the record at oral argument on January 7, 1991, the following constitutes the Court's findings of fact and conclusions of law (see Fed.R.Civ.P. 52[a]; Weitzman v. Stein, 897 F.2d 653, 658 [2d Cir.1990]).

## DISCUSSION

As stated above, the defendants challenge this motion for a preliminary injunction preventing Solis from fighting Calvin Grove on the evening of Tuesday, January 8, 1991, on three grounds, namely, lack of diversity jurisdiction, lack of personal jurisdiction and failure to meet the standards for obtaining a preliminary injunction.

(a) *Subject Matter Jurisdiction.*

■ As to the "amount in controversy" requirement for diversity jurisdictional purposes, the plaintiff alleges the following: "20. Since November 20, defendant Solis has failed to comply with his obligations under the contract with plaintiff and has breached his contract with plaintiff.

21. As a result of the foregoing, plaintiff Arias has sustained damages in the sum of $150,000.00" (Complaint ¶¶ 20–21).

The defendants contend that since the plaintiff alleges that he seeks reimbursement for expenses in the sum of $8,000 and that concededly the Grove Bout purse is only $5,000, of which the plaintiff is to receive one-third or $1667, the plaintiff cannot demonstrate that the amount in controversy exceeds $50,000, the jurisdictional predicate.

All diversity actions filed on or after May 19, 1989 must allege that the amount in controversy exceeds $50,000 (see 28 U.S.C. § 1332[a], as amended by Pub.L. 100–702). In determining whether the required "amount in controversy" has been met, the Supreme Court enunciated the following standard:

"The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal" (*St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288–89, 58 S.Ct. 586, 590, 82 L.Ed. 845 [1938]).

■ In making this determination, the "district courts are not restricted by the rule ... from looking further than the plaintiff's complaint in deciding whether a controversy involves recoverable sums in excess of" the required jurisdictional amount (*Deutsch v. Hewes Street Realty Corp.*, 359 F.2d 96, 100 [2d Cir.1966]; see also 1 C. Miller, *Cyclopedia of Federal Practice* § 2.185, at p. 506 [3d ed.1989] [importance attached to amount alleged in *ad damnum* clause, but court must also look to facts alleged in complaint to determine whether the case is within federal court jurisdiction]). "[S]peculative allegations of indirect, nonpecuniary benefits may not be used to meet the amount in controversy requirement" (*see Black v. Beame*, 550 F.2d 815, 817 [2d Cir.1977] [citation omitted]), and "the jurisdictional test is applicable to that amount *that flows directly and with a fair degree of proba-*

*bility from the litigation, not from collateral or speculative sources"* (*Kheel v. Port of New York Authority*, 457 F.2d 46, 49 [2d Cir.1972] [emphasis supplied] ). The Court, of course, is not to "delv[e] into the comparative merits of a case when deciding the issue of jurisdictional amount" (*Liamuiga Tours v. Travel Impressions, Ltd.*, 617 F.Supp. 920, 928 [E.D.N.Y.1985] ).

The Second Circuit set forth the applicable standard as follows:

"Although diversity jurisdiction depends upon the amount in controversy exceeding [$50,000], jurisdiction is not lost because a plaintiff's ultimate recovery is less than that amount. The jurisdictional determination is to be made on the basis of the plaintiff's allegations, not on a decision on the merits. Moreover, even where those allegations leave grave doubt about the likelihood of a recovery of the requisite amount, dismissal is not warranted.... *Rather, it must appear to a legal certainty from the complaint that the plaintiff cannot recover sufficient damages to invoke federal jurisdiction*" (*Zacharia v. Harbor Island Spa, Inc.*, 684 F.2d 199, 202 [2d Cir.1982] [citations omitted; emphasis supplied] ).

(*See also Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 346, 97 S.Ct. 2434, 2443, 53 L.Ed.2d 383 [1977]; *Halmos v. Pan Am. World Airways, Inc.*, 727 F.Supp. 122, 125 [S.D.N.Y.1989]; *Moore's Federal Practice* ¶ 0.92[1], at pp. 852–59 [2d ed. 1990] ).

Applying the standard set forth in *Zacharia v. Harbor Island Spa, Inc., supra*, the Court finds that the plaintiff has sufficiently alleged the requisite jurisdictional amount for purposes of satisfying the provisions of 28 U.S.C. § 1332(a). While there appears to be little support for the alleged $150,000 in damages claimed, the defendants have not demonstrated to a legal certainty that Arias is not entitled to damages in excess of $50,000 (*see Liamuiga Tours v. Travel Impressions, Ltd., supra*, 617 F.Supp. at p. 929), or that the plaintiff's claimed prospective damages for breach of contract are alleged in bad faith to simply meet the jurisdictional require-

ment (*see Halmos v. Pan Am. World Airways, Inc., supra*, 727 F.Supp. at p. 125).

In fact, at oral argument on January 7, 1991, counsel for the plaintiff offered a letter in evidence written in Spanish indicating that negotiations for a fight with the world champion Esparragoza are ongoing, which could result in a purse of approximately $80,000 (*see* Plaintiff's Exhibits 4 and 5 [English translation] ), as well as additional fights for Solis.

Accordingly, the Court finds that the plaintiff has met the jurisdictional "amount in controversy" requirement.

(b) *Lack of Personal Jurisdiction.*

The Peltz defendants (*i.e.*, the promoters), next allege that under CPLR 302, New York's long-arm statute, the Court does not have personal jurisdiction over them. Since the present motion for a preliminary injunction seeks only to enjoin *Solis* from taking part in the Grove Bout, then the Court need not determine at this juncture whether *in personam* jurisdiction exists over Peltz. The Peltz defendants are, of course, free to make a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2).

(c) *Availability of Injunctive Relief.*

In order to determine whether the plaintiff is entitled to the extraordinary relief of a preliminary injunction, the Court must first determine the availability of an injunction with respect to a personal services contract and, second, if so, whether Arias is entitled to preliminary injunctive relief in this case. Finally, the requirement of posting security is considered.

Injunctive Relief for Personal Services Contract:

Under New York law, it is well settled that as a general rule a court of equity will not specifically enforce a contract for personal services (*see* 67 N.Y.Jur.2d, *Injunctions* § 77, at pp. 466–70 [1988] [collecting cases] ). However, "where an employee refuses to render services to an employer in violation of an existing contract, and the services are unique or extraordinary, an injunction may issue to pre-

vent the employee from furnishing those services to another person for the duration of the contract" (*see American Broadcasting Cos., Inc. v. Wolf*, 52 N.Y.2d 394, 402, 438 N.Y.S.2d 482, 486, 420 N.E.2d 363, 367 [1981] [citation omitted]; *see generally* 3 E. Farnsworth, *Contracts* § 12.5 [1990] ["A court will not, however, grant an injunction unless the remedy in damages would be inadequate. This requirement is met if the employee's services are unique or extraordinary...."]).

■ Even though a contract may expressly state that the employee's services are unique or extraordinary, as in this case, the Court is not bound by that statement, and it does not preclude the Court from making a finding to the contrary (*see* 67 N.Y.Jur.2d, *Injunctions* § 77, at p. 469 [1988] [footnote omitted]).

■ Finally, as to the specific performance of personal services contracts involving athletes, before granting an injunction, it must be shown "that the player [is] an athlete of exceptional talent" (*Nassau Sports v. Peters*, 352 F.Supp. 870, 876 [E.D.N.Y.1972] [Neaher, J.] [citations omitted]).

■ Here, the Court finds that Solis' services are "unique and extraordinary", and therefore the Court has the *power* to enforce the negative covenant in the Management Contract by enjoining Solis from engaging in any exhibitions or bouts without the prior approval of Arias (*see Madison Square Garden Corp. v. Carnera*, 52 F.2d 47 [2d Cir.1931]).

Although *Carnera* is an early decision, the facts and principles set forth therein are particularly applicable here, and the case still represents the current state of the law.

In *Carnera*, the defendant boxer entered into a written contract with Madison Square Garden ("MSG") in which he agreed to fight the winner of the proposed "Schmeling–Stribling contest". Carnera also agreed that he would not "render services as a boxer in any major boxing contest, without the written permission of the Garden" (52 F.2d at p. 48). A "major con-

test" included bouts with "Sharkey, Baer, Campolo, Godfrey, or the like grade heavyweights" (*id.*). Thereafter, without the written permission of MSG, Carnera entered into a contract to fight Sharkey, which was to take place before the conclusion of the Schmeling–Stribling contest. In upholding the District Court's grant of a preliminary injunction preventing Carnera from fighting Sharkey, the Second Circuit stated:

> "The District Court has found on affidavits which adequately show it that the defendant's services are unique and extraordinary. A negative covenant in a contract for such personal services is enforceable by injunction where the damages for a breach are incapable of ascertainment.
>
> *   *   *   *   *   *
>
> As we have seen, the contract is valid and enforceable. It contains a restrictive covenant which may be given effect. Whether a preliminary injunction shall be issued under such circumstances rests in the sound discretion of the court" (52 F.2d at p. 49).

*See also Madison Square Garden Boxing, Inc. v. Shavers*, 434 F.Supp. 449, 452 (S.D.N.Y.1977) (heavyweight champion preliminarily enjoined from participating in any other match for duration of contract with MSG).

First, the Court notes that in this regard, the defendants do not take issue in their papers in opposition with the characterization of Solis as "unique and extraordinary". In fact, the issue first arose when the Court raised it *sua sponte*. At oral argument, counsel for the defendants alleged that Solis is not even ranked at this point since he has not fought for an extended period of time. However, the plaintiff offered into evidence two ranking lists as of November 1990, which indicate that in the Featherweight Division (126 pounds), Solis is ranked number ten by the International Boxing Federation (Plaintiff's Exhibit 3), and number seven by the United States Boxing Association (Plaintiff's Exhibit 4). This evidence is uncontroverted.

Accordingly, the Court finds the services of Solis to be "unique and extraordinary" (*cf. Nassau Sports v. Peters*, 352 F.Supp. 870, 876 [E.D.N.Y.1972] [professional athletes of exceptional talent are "unique and extraordinary"] ).

The Court also finds that the plaintiff Arias will suffer irreparable harm in the absence of an injunction.

Arias alleges that Solis is not fit to fight Grove for the scheduled bout. Specifically, Arias contends that the weight limit for the Grove Bout is 130 pounds, which is above the usual limit for Solis; that the purse is too small for a fighter of Solis' stature; and, in any event, that Solis suffered an arm injury from a recent automobile accident.

Significantly, however, Arias himself signed a contract on October 15, 1990 to have Solis fight the same Calvin Grove on November 13, 1990 in Baltimore, Maryland. That fight was cancelled, not by Arias, but by the Maryland State Athletic Commission ("MSAC") on the eve of the scheduled bout since Solis failed a state-required neurological examination (*see* Plaintiff's Exhibit 1). The MSAC specifically found that Solis has shown "progressive and ongoing neurological damage (brain damage)" (Plaintiff's Exhibit 1).

Arias alleges that even though he signed Solis to fight Grove in November 1990, he is now not fit to take part in the bout. According to Arias, if he partakes in the match and loses, he will have no chance to fight Esparragoza or other higher ranked fighters. Again according to Arias, in that event Solis will be "washed up".

The Court finds that Solis is a unique and extraordinary boxer and also that Arias will suffer irreparable harm if the fight with Calvin Grove goes forward on Tuesday, January 8, 1991. As Solis' manager, Arias has determined, in his judgment that the fight ought not take place and that it would not be in the best interests of Solis' career. Solis expressly agreed to this arrangement in the Management Contract which was approved and filed with the State Athletic Commission.

The Court also finds that the plaintiff is likely to ultimately succeed on the merits of the breach of contract claim against Solis. The contract specifically states that Solis shall not engage in any matches or contests without first obtaining the approval of Arias (*see* Boxer–Manager Contract ¶ 5). It is undisputed that during the course of this agreement, Solis signed a contract with the Peltz defendants as promoters for the Grove Bout scheduled for January 8, 1991 in direct violation of this clause.

Accordingly, the Court grants the motion of Arias for a preliminary injunction enjoining the defendant Julian Solis from participating in the bout with Calvin Grove scheduled for Tuesday, January 8, 1991.

The Court must now determine the amount of security to be posted.

Requirement of Posting Security.

Fed.R.Civ.P. 65(c) specifically states:

"(c) **Security.** No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is wrongfully enjoined or restrained."

*See also Blumenthal v. Merrill Lynch, Pierce Fenner & Smith, Inc.*, 910 F.2d 1049, 1054 (2d Cir.1990) ("A party has been 'wrongfully enjoined' under Fed.R. Civ.P. 65(c) if it is ultimately found that the enjoined party had at all times the right to do the enjoined act").

The purpose of the requirement of security is to secure indemnification for the enjoined party during the period in which a wrongfully issued injunction remains in effect (11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2954 [1973 & Supp.1990] ). Rule 65(c) is mandatory in that once the Court determines to grant equitable relief, security must be posted. In fact, it has been noted that a court's failure to require the posting of security could be reversible error (*see* 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2954, at p. 524 n. 66 [1973] [collecting cases] ).

Although the rule is mandatory, the District Courts do have discretion in setting the *amount* of security to be posted (*see* Fed.R.Civ.P. 65[c]).

"Accordingly, the judge usually will fix security in an amount that covers the potential incidental and consequential costs and either the losses the unjustly enjoined or restrained party will suffer during the period he is prohibited from engaging in certain activities or the complainant's unjust enrichment caused by his adversary being improperly enjoined or restrained.

\*     \*     \*     \*     \*     \*

Given the court's discretionary power under Rule 65(c), the imprecise measure of some of the elements of damage, and the varying ability of defendants to establish their contemplated injuries, courts have responded to the obligation to set security by requiring a variety of dollar amounts to be posted by a successful applicant as a prerequisite to the issuance of injunctive relief" (11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2954, at p. 525–26 [1973] [footnotes omitted]).

The defendants contend that Peltz is to receive $30,000 from USA Network for the Grove Bout as well as $20,000 in receipts from the gate. The defendants also allege that USA Network has stated that it would cancel two other bouts promoted by Peltz for March and June 1991 if the Grove Bout is cancelled, for which Peltz alleges he is to receive an additional $30,000 each.

In the Court's exercise of its discretion, upon review of the arguments of counsel and a consideration of all the facts in this case, the plaintiff is required to post security in the amount of $80,000 by 4:00 p.m. on January 7, 1991.

## CONCLUSION

Based upon the foregoing:

1. The Court finds that the plaintiff has satisfied the "amount in controversy" requirement of 28 U.S.C. § 1332(a), thus federal diversity jurisdiction exists over this action.

2. The Court finds that the services of defendant Julian Solis are "unique and extraordinary", thus the Court has the power to issue a preliminary injunction with respect to this personal services contract. In this regard, the Court also finds that the plaintiff has established irreparable harm and a likelihood of success on the merits of the breach of contract claim against the defendant Julian Solis.

3. Accordingly, the defendant Julian Solis is preliminarily enjoined from participating in the scheduled fight with Calvin Grove on January 8, 1991 in Philadelphia, and only to that extent.

4. The plaintiff shall post security in the amount of $80,000, by 4:00 p.m. on January 7, 1991, and file proof of such security with the Clerk of the Court by 4:30 p.m. on January 7, 1991. Failure to either post the security or file proof of the same within that time, renders this preliminary injunction void *ab initio* and this order shall immediately be vacated by its own terms without further application.

SO ORDERED.