**Alfredo MARCHIO, t/a Marchio's International Productions,**

v.

**Julian LETTERLOUGH and Michael Marley.**

**Civil Action No. 02–cv–8254.**

United States District Court, E.D. Pennsylvania.

Jan. 15, 2003.

George Bochetto, Bochetto & Lentz PC, Philadelphia, PA, for Plaintiff.

David P. Heim, Bochetto & Lentz PC, Philadelphia, PA, for Defendant.

### MEMORANDUM

BAYLSON, District Judge.

## I. Introduction

The issue presented is whether Plaintiff Alfredo Marchio, trading as Marchio's International Productions (hereinafter "Marchio") is entitled to a preliminary injunction against professional boxer Julian Letterlough ("Letterlough") and Letterlough's manager, Michael Marley ("Marley"), both of whom are the Defendants in this suit. Plaintiff's Complaint seeks relief against Letterlough for breach of contract, and against Marley for tortious interference of the contract, and against both Defendants for unjust enrichment and defamation, in addition to equitable relief.

On June 20, 2000, Marchio and Letterlough entered into an exclusive promotional agreement for Marchio to act as promoter for Letterlough's professional bouts. The theory on which Marchio seeks a pre-liminary injunction is that the boxing services of Letterlough, and Marchio, as a professional boxing promoter, are unique; and although Marchio could not, and does not, seek to enjoin Letterlough's alleged breach of this contract, Marchio does assert that, as having the exclusive rights to be Letterlough's promoter, he would be irreparably injured if Letterlough were to engage in professional bouts promoted by someone else. Thus, Plaintiff does seek a preliminary injunction based on a so-called "negative covenant," to enjoin Letterlough from fighting under the aegis of another promoter. Marchio also seeks to enjoin Marley, who currently serves as Letterlough's manager, from tortious interference with the Marchio–Letterlough promotional contract.

Shortly after the filing and service of the Complaint, the parties entered into a Stipulation for Temporary Restraining Order, which the Court entered, and which gave Plaintiff injunctive relief pending entry of this Court's further Order after an evidentiary hearing.

In summary, the Court finds that Marchio has established that because of his significant work in building up Letterlough as a nationally ranked and reputable professional fighter, he has a protected legal interest in continuing, during the term of his exclusive promotional contract with Letterlough, to be identified with Letterlough as a promoter or co-promoter of bouts in which Letterlough is fighting, and that Marchio has established the other requirements for a preliminary injunction. Thus, Marchio is entitled to specific, albeit limited injunctive relief to protect and preserve his reputation and relationship with Letterlough, pending a final hearing in this case. However, because the services at issue in this case are personal services, and courts are usually very reluctant to enter an injunction in the realm of person-

al services, the Court cannot grant Marchio the wide sweeping relief which he seeks. There is no basis to grant any injunctive relief against Marley, as any liability which he may have to Marchio can be compensated in damages.

## II. *Jurisdiction*

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, based on complete diversity of citizenship. Because evidence was introduced at the hearing which tended to show that Defendant Letterlough was, at certain times, a resident of Pennsylvania, and thus there would be no diversity of citizenship, the Court required the parties to submit supplemental information as to the citizenship of Mr. Letterlough. Plaintiff submitted an affidavit establishing that at the time of commencement of the lawsuit (which is the relevant time, *see Freeport–McMoRan, Inc. v. K N Energy, Inc.,* 498 U.S. 426, 428, 111 S.Ct. 858, 112 L.Ed.2d 951 (1991)), Mr. Letterlough resided in Indiana. Mr. Letterlough has not submitted any supplemental information. There is no dispute that the amount in controversy exceeds $75,000. Thus, diversity of citizenship exists.[1]

This Court has personal jurisdiction over the parties in that both Defendants have done business in Pennsylvania. Moreover, within the promotional agreement at issue, Defendant Letterlough consented to jurisdiction in Pennsylvania, in the event of a dispute. *See* Ex. P–4. Defendants have not contested these jurisdictional facts.

## III. *Facts*

Upon review of the evidence presented at the hearing on December 3, 2002, this Court finds that Plaintiff is credible and has established the following essential facts.

On June 2, 1998, Marchio and Letterlough entered into a written Boxer Manager Contract, with a stated term of three years, which terminated by its own terms. *See* Ex. P–3. On June 20, 2000, Plaintiff and Letterlough entered into a separate Exclusive Promotional Agreement. *See* Ex. P–4. The promotional agreement granted Plaintiff the exclusive right to "promote" Letterlough's boxing contests for a period of thirty-six months, ending on June 20, 2003. *Id.* ¶ 1, 3.

Paragraph 1 of the promotional agreement provided:

Fighter hereby grants to Promoter the exclusive right to promote all professional boxing contests to be engaged in by Fighter during the term of this Agreement. Promoter or its designees shall promote such bouts subject to the terms and conditions set forth herein. Such exclusive promotion rights shall include, without limitation of the foregoing, (a) all rights required to stage and sell tickets of admission to all boxing contests as well as (b) the ancillary rights thereto, including without limitation all exclusive world wide rights to broadcast, telecast, record and film such bouts for exhibition in all media in perpetuity and all merchandising rights relating to such bouts. Fighter retains all personal endorsements as long as they do not conflict with the show sponsors.

Although the agreement also provides, in paragraph 4, that "fighter shall box and otherwise engage in the bouts arranged by promoter . . . as mutually agreed upon by fighter and promoter," the testimony revealed that if the fighter, for whatever

---

**1.** In an Amended Complaint filed December 11, 2002, Plaintiff, by virtue of an additional Count alleging violation of the Lanham Act, 15 U.S.C. § 1125(a), now seeks to also rest jurisdiction on the existence of a federal question.

reasons, refused to fight, there was really nothing that the promoter could do about it. However, it is usually in the fighter's interest to engage in bouts that the promoter arranges, because it is in the economic interest of both that the fighter fights in bouts that can be arranged. Nonetheless, the testimony provided examples of disputes which arise between a fighter and a promoter, where the parties disagree as to whether a particular fight, because of the identity of the opponent, the location, the purse, etc., is in the best interest of the fighter and/or the promoter. There was substantial testimony that such recent disagreements between Marchio and Letterlough have caused their past close relationship to deteriorate.

Marchio testified extensively to his efforts over several years to develop Letterlough into a well known fighter and support him financially. Plaintiff's own testimony was detailed and persuasive on this point. Plaintiff testified that he conveyed a residence in Reading, Pennsylvania worth $27,000 to Letterlough to provide him with a place to live and helped support him financially, by advancing to Letterlough over $100,000 in cash. In his testimony, which the Court also finds generally credible, Letterlough acknowledged Marchio's support in the early years of their relationship, but testified that Marchio had recently stopped giving financial support to him, which was one of the reasons why Letterlough went to Defendant Marley for a new managerial contract.[2]

Exhibit P–9 contains a summary of the professional fights in which Letterlough has engaged. In most of these fights, Marchio was the sole promoter, but in several of them, Marchio served as co-promoter. He is listed as promoter or co-promoter in all of Letterlough's fights.

There was testimony about the financial aspects of each bout. Letterlough's record is considered, under the testimony, to be very good in that he has won 18 bouts, lost 3, and one came to a draw. There was testimony that he is a potential world championship contender, who has been on television on several occasions, and is able to attract significant attention in the fighting world, and recently, substantial purses.

From the documents, Marchio had both a managerial contract and a promotional contract with Letterlough for a certain period of time. This period was for approximately one year between June 20, 2000, when the exclusive promotion contract was signed, and June 2, 2001, when the managerial contract between Marchio and Letterlough terminated by its own terms. Marchio testified that once the promotional agreement was signed, he only acted as Letterlough's promoter. Letterlough testified that he thought Marchio had acted as his manager throughout their relationship.

On September 16, 2002, Letterlough sent a letter to Plaintiff, stating that Plaintiff was "terminated" as Letterlough's "manager." Ex. P–11. However, as stated above, the management contract had already terminated. Thereafter, Letterlough and Defendant Marley entered into a management contract. Ex. P–12. On September 30, 2002, Marley sent a letter to Marchio stating that Marley was "the one and only boxing manager" for Letterlough. *See id.* The letter also demanded that Plaintiff "cease and desist" from tortious interference with the Marley–Letterlough contract. *Id.*

At the hearing, the testimony was consistent that there is a distinction between the duties of a promoter and a manager.

---

**2.** There is a dispute in the Marchio–Letterlough testimony about some details of their recent financial relationship. There is no need to resolve this issue to rule on the pending motion.

A promoter arranges for the bouts and any television rights, and his interest is to maximize the revenues for the event, as well as his own revenues; the promoter has no fiduciary duty to the fighter. On the other hand, the manager has the fighter's best interests at heart, has a fiduciary relationship with the fighter, and often assists the fighter in the fighter's "corner" during the bout. Generally, the manager receives a cut of the fighter's purse. The financial arrangement between the fighter and his manager, on the one hand, may be subject to state regulation, but the financial relationship between the fighter and the promoter, on the other, is subject to negotiation between them. Although Marchio denied that he had acted as a manager for Letterlough after the promotional contract between himself and Letterlough was signed, there was some evidence, from the documents that Marchio had signed, either purposely or carelessly, indicating that he was serving as Letterlough's manager. Marchio denied that he had acted as Letterlough's manager in these instances.[3]

Defendant Marley, who is also an attorney in New York State, and who represented himself at the hearing, conducted a spirited cross examination of Marchio. Marley contends, in his written submissions to the Court, as well as by his cross examination and arguments, (but he did not testify), that there is an inherent conflict of interest between an individual serving as both a promoter and a manager. Marchio was unwilling to concede an absolute conflict, although he did recognize the difference in the services provided by a promoter and a manager.

In his testimony, Letterlough (who is not represented by counsel) described his relationship with Marchio and corroborated a good deal of Marchio's testimony as to Marchio's building up Letterlough's reputation. Letterlough testified that he thought that Marchio was always his manager, but also recognized that he and/or Marchio's ex-wife also performed promotional services. Letterlough testified that he now recognized that his promotional contract with Marchio was still in existence, and that he was not opposed to Marchio still acting as promoter. However, he felt uncomfortable with Marchio's recent conduct towards him, and clearly, at this time, has greater confidence in Marley acting in his interest, and Marley is, indeed, currently the manager of Letterlough.

There was substantial testimony as to whether certain recent fights of Letterlough have been in his interest, whether they have advanced or deterred his career and reputation as a professional fighter, and what should happen next in his fighting career. Letterlough stated that he was currently 33 years old and that he only had a few additional years remaining as a competitive professional fighter. There was also testimony, supported by the Declaration of Robert Yalen, Director of Boxing Programming and Acquisitions at ESPN, the leading national sports television network, that he had given Marchio the right to promote a fight on November 24, 2002, between Letterlough and another fighter named Ravea Springs, but that Marley had recommended to Letterlough

**3.** Defendant Marley asserts that Marchio is guilty of unclean hands and not entitled to equitable relief by virtue of his acting as manager, without a managerial contract, and/or acting as both manager and promoter for the same fight, which would be contrary to custom in the boxing industry—and also allegedly in violation of an act of Congress. *See* 15 U.S.C. § 6308(b) (prohibiting promoters in certain circumstances from having financial interests in management of boxers). Based on the totality of the evidence at the hearing, this Court is unable to conclude that Marchio is guilty of unclean hands. However, this issue remains in the case for discovery and further evidence at trial.

that he not fight Springs, even though he would appear on ESPN, with the financial rewards and television exposure which would have resulted. As a result of Marley's recommendation, Letterlough did not fight in this match. Marchio has presented this as evidence that Marley is not acting in Letterlough's best interest and is not doing anything to protect Marchio's reputation as having exclusive promotional rights with Letterlough, and that injunctive relief is necessary to protect Marchio's rights in enforcing his exclusive promotional contract.

Marchio also presented testimony that, as a result of his acting as promoter or co-promoter in virtually all of Letterlough's bouts to date, he has acquired a reputation in the closely-knit professional boxing world, that he is known to be Letterlough's promoter. Marchio testified that if Letterlough is allowed to have future bouts arranged with another promoter, this will irreparably injure Marchio's general reputation as a promoter and specifically will damage the identity that he has consciously and purposely built up over the years as the promoter for Letterlough's fights.

## IV. *Discussion of Law*

Although Plaintiff's claims arise under state law, this Court adheres to federal standards in examining requests for preliminary injunctions. *See* Fed.R.Civ.P. 65; *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 799 (3d Cir. 1989). In ruling on a motion for a preliminary injunction, the Court must consider the following four factors: (1) the likelihood that the moving party will prevail on the merits; (2) the extent to which the moving party is irreparably harmed; (3)

the extent to which the non-moving party will suffer irreparable harm if the injunction is issued; and (4) the public interest. *See AT & T Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994). Issuing a preliminary injunction is an "-'extraordinary remedy' and should be restricted to 'limited circumstances.'" *Moscony v. Quaker Farms, LP*, No. 00–cv–2285, 2000 WL 1801853, at *1 (E.D.Pa. Dec.8, 2000) (*quoting Instant Air Freight*, 882 F.2d at 800). Before a preliminary injunction may be granted all four factors must weigh in its favor. *See Pappan Enter., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 803 (3d Cir.1998). The moving party bears the burden to prove that all elements required for a preliminary injunction are met. *See Adams v. Freedom Forge Corp.*, 204 F.3d 475, 486 (3d Cir. 2000). This Court will consider the four factors in turn.

### A. *Likelihood of Success on the Merits*

As discussed above, Plaintiff has presented uncontradicted evidence demonstrating his clear contractual right to act as Defendant Letterlough's exclusive promoter at least until June 20, 2003. Therefore, Plaintiff is likely to ultimately succeed on the merits of his claim of breach of contract.[4]

### B. *Irreparable Harm*

The Court of Appeals for the Third Circuit has summarized the irreparable harm requirement as follows:

> Establishing a risk of irreparable harm is not enough. A plaintiff has the burden of proving a "clear showing of immediate irreparable injury." ... The

---

**4.** Although the Marchio–Letterlough contract contains a provision stating that because Letterlough's services are "special, unique, extraordinary, irreplaceable and of peculiar value," Marchio shall, in the event of a breach, be entitled to injunctive relief, such a contractual clause is not binding upon this Court, which must independently consider the question of irreparable harm. *See Telamerica Media Inc. v. AMN Television Marketing*, No. 99–cv–2572, 1999 WL 1244423, at *14 (E.D.Pa. Dec.21, 1999).

"requisite feared injury or harm must be irreparable—not merely serious or substantial," and it "must be of a peculiar nature, so that compensation in money cannot atone for it." ... "[W]e have never upheld an injunction where the claimed injury constituted a loss of money, a loss capable of recoupment in a proper action at law." ...

When the claim is based on a breach of contract, irreparable injury may be found in two situations: (1) where the subject matter of the contract is of such a *special nature or peculiar value* that damages would be inadequate; or (2) where because of some special and practical features of the contract, it is *impossible to ascertain* the legal *measure of loss* so that money damages are impracticable.

*ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir.1987) (emphasis added) (citations omitted). *See also National Business Services, Inc. v. Wright,* 2 F.Supp.2d 701, 709 (E.D.Pa.1998) (stating, under Pennsylvania law, harm "is irreparable when it cannot be adequately compensated in damages, either because of the nature of the right that is injured, or because there exists no certain pecuniary standards for the measurement of damages").

1. *Irreparable Harm Arising From Breach of a Personal Services Contract*

a. *Pennsylvania Law*

The general rule regarding personal services contracts is stated in § 380(2) of the first Restatement of Contracts:

(2) A contract to render personal service exclusively for one employer will not be indirectly enforced by injunction against serving another person, if

(a) the employer is not ready and willing to continue to perform his part of the contract; or

(b) performance of the contract will involve personal relations the enforced continuance of which is undesirable; or

(c) the injunction will leave the employee without other reasonable means of making a living; or

(d) the service is not unique or extraordinary in character.

Restatement of Contracts § 380.[5] The Pennsylvania Supreme Court has adhered to the "unique and extraordinary" requirement in cases involving personal services contracts. *See H. Daroff & Sons, Inc. v. Vitullo,* 350 Pa. 501, 39 A.2d 595, 598 (1944).

In *H. Daroff & Sons,* the defendants had agreed to do tailoring work exclusively for the plaintiff through the term of the contract. *See id.* at 597. When defendants breached, plaintiff could not find another contractor that was "equipped to make overcoats of the grade desired by plaintiff nor in anything like the quantity which defendants' plant was equipped to make." *Id.* at 598. Accordingly, the Supreme Court, citing Restatement § 380, affirmed the injunction restraining defendants from violating the negative covenant. *See id.*

A century ago, the Pennsylvania Supreme Court applied the "unique and ex-

---

**5.** In the instant case, none of the four Restatement prongs, (a)-(d), apply to ban an injunction. Marchio is ready and willing to continue to perform his part of the contract. An injunction will not leave Letterlough without reasonable means of making a living. Nor will the injunction issued by this Court compel personal relations which are undesirable because Letterlough testified he had no objec-

tion to Marchio acting as the promoter for his bouts, but, in any event, this Court is only requiring that Marchio be *listed* as a promoter or co-promoter. If Letterlough chooses not to communicate with Marchio, the manager, Marley, can handle such communications. Finally, under the evidence and law, the services of Letterlough are unique or extraordinary in character.

traordinary" doctrine in a sports context. *See Philadelphia Ball Club v. Lajoie*, 202 Pa. 210, 51 A. 973 (1902). In *Philadelphia Ball Club*, the defendant, a baseball player, had contracted to play only for the plaintiff's team during the term of the agreement. *See id.* 51 A. at 973. Yet defendant thereafter arranged to play for a rival team. The trial court refused to enjoin defendant from playing for the other team, finding that plaintiff would not sustain an irreparable loss. That court believed that no injunction should issue unless defendant's services were such that it would be "impossible to replace him." *Id.* The Supreme Court reversed, finding the trial court's standards "extreme." *Id.* The Supreme Court held that

> [w]here one person agrees to render personal services to another, which require and presuppose a *special knowledge, skill and ability* in the employee, so that in case of a default the same service *could not easily be obtained from others*, although the affirmative specific performance of the contract is beyond the power of the court, its performance will be negatively enforced by enjoining its breach.... The damages for breach of such contract cannot be estimated with any certainty, and the employer cannot, by means of any damages, purchase the same service in the labor market.

*Id.* (emphasis added). Based on evidence presented in the trial court showing that defendant was a highly talented player with a "great reputation" among fans, the Supreme Court concluded that defendant's performance was especially valuable to plaintiff, and not easily replaced. *Id.* Accordingly, the breach would produce an irreparable injury and should be enjoined, the court ruled. *Id.* In summing up its

holding, the court in *Philadelphia Ball Club* stated: "The court cannot compel the defendant to play for the plaintiff, but it can restrain him from playing for another club in violation of his agreement." 51 A. at 975.

The United States Court of Appeals for the Third Circuit has cited the *Philadelphia Ball Club* decision in deciding a dispute between a boxer and a promoter. *See Madison Square Garden Corp. v. Braddock*, 90 F.2d 924, 926 (3d Cir.1937). In *Braddock*, the parties had entered into a written agreement whereby the defendant—boxer would fight Max Schmeling on a certain date, and would not fight Joe Louis until after the Schmeling fight. *See id.* at 925. Thereafter, defendant entered into a contract to fight Joe Louis just 19 days after the Schmeling fight was to take place. *Id.* at 926.

The trial court in *Braddock* denied the promoter's request for an injunction and the Third Circuit affirmed. The Court of Appeals found defendant in breach of his contract, in that a boxer cannot physically participate in two major bouts within such a short period. *Id.* However, the court refused to enforce the negative covenant because the contract did not provide for "mutuality of remedy"—meaning that the promoter had certain remedies under the contract which the boxer did not.[6] *Id.* at 927. Yet, in its opinion, the *Braddock* court recognized the general rule that a negative covenant will be enforced where the defendant's services are "unique and extraordinary." *Id.* at 926.

Courts in Pennsylvania have adhered to the principles discussed above. *See, e.g., Alabama Binder & Chem. Corp. v. Pennsylvania*, 410 Pa. 214, 189 A.2d 180, 184 (1963) (*citing Philadelphia Ball Club* for

---

**6.** The instant case differs from *Braddock* inasmuch as Letterlough could have brought an action in equity to enjoin a breach of the Marchio–Letterlough promotional contract by Marchio.

proposition that irreparable harm is threatened when damages would be "difficult, if not impossible, to ascertain"); *T.W. Phillips Gas and Oil Co. v. Peoples Natural Gas*, 89 Pa.Cmwlth. 377, 492 A.2d 776, 781 (1985) (*quoting Philadelphia Ball Club* for the rule that when "no certain pecuniary standard exists for the measurement of damages," threatened harm is irreparable); *Philadelphia Hockey Club, Inc. v. Flett*, 58 Pa. D. & C.2d 367, 371 (Pa.Com. Pl.1972) (enjoining hockey player from playing for team other than plaintiff's); *Pike Rollarena, Inc. v. Clark*, 54 Pa. D. & C.2d 25, 27 (Pa.Com.Pl.1971) (enjoining organist from playing for any employer other than Plaintiff's roller rink during certain hours); *Rosenbaum v. Hardie*, 16 Pa. D. & C. 645, 646 (Pa.Com.Pl.1932) (enjoining actor from flying in violation of contract which permitted travel only with theater's permission); *Weirmuller v. Stone*, 3 Pa. D. & C. 165, 169 (Pa.Com.Pl.1923) (enforcing exclusive management contract against boxer who had breached by signing with other manager). *See also Commercial Radio Inst., Inc. v. Western Pa. Christian Broad. Co.*, 428 F.Supp. 1054, 1057 (W.D.Pa.1977) (finding threat of irreparable harm due to "unique" property interest involved).

### b. Other Jurisdictions

The parties have cited numerous cases decided by federal courts in New York and New Jersey,[7] the majority of which are in accord with Pennsylvania law. *See Madison Square Garden Corporation, Ill. v. Carnera*, 52 F.2d 47 (2d Cir.1931) (affirm-

ing order enjoining boxer from breaching covenant not to fight without plaintiff-promoter's permission); *Lewis v. Rahman*, 147 F.Supp.2d 225, 232–33, 238 (S.D.N.Y. 2001) (enjoining defendant-boxer from fighting until he complies with contractual obligation to fight plaintiff-boxer, who would suffer irreparable harm if denied chance to fight for championship). *But see Wolf v. Torres*, No. 87–cv–1795, 1987 WL 10033, at *3 (S.D.N.Y.1987) (denying injunction barring defendants from contracting with boxer, where plaintiff-manager had adequate legal remedy, in that "money damages were available to him for any alleged lost profits, injury to standing, reputation, prestige and credit"); *Machen v. Johansson*, 174 F.Supp. 522, 531 (S.D.N.Y. 1959) (refusing to enjoin defendant-boxer from fighting anyone prior to fighting plaintiff as required by contract, as such restraint would be an "intolerable and unreasonable burden").

In *Arias v. Solis*, 754 F.Supp. 290, 291 (E.D.N.Y.1991), a boxer and his manager had an agreement whereby the boxer promised not to participate in boxing exhibitions except as approved by the manager. The manager sued the boxer and moved for a preliminary injunction enjoining defendant from participating in a particular upcoming bout which plaintiff had not approved. *See id.* at 291. Plaintiff, who had expended effort and money in developing defendant as a boxer, contended that defendant was not qualified to fight the scheduled opponent and that such fight would be detrimental to defendant's ca-

---

7. Plaintiff refers this Court to a recent decision of the United States District Court for the District of New Jersey, in which the plaintiff had entered into an "Exclusive Representation Agreement" with the defendant-boxer. *O'Donnell v. Shalayev*, No. 01–cv–4721, slip op. at 1 (D.N.J. Feb. 14, 2002). Plaintiff sued for breach of that agreement and sought a preliminary injunction. The defendant,

though served, "failed to submit any opposition" to the motion, or even attend the hearing. *Id.* The court enjoined defendant from entering into any fight, except through plaintiff. *See id.* at 3. The *O'Donnell* case is distinguishable from the present case, inasmuch as the defendants offered no opposition to the injunction. In the instant case, Defendants have vigorously opposed any injunction.

reer—thereby injuring Plaintiff's interests. *See id.* at 292.

Applying New York law, the *Arias* court found that "where an employee refuses to render services to an employer in violation of an existing contract, and the services are unique or extraordinary, an injunction may issue to prevent the employee from furnishing those services to another person for the duration of the contract." *Id.* at 293–94 (*quoting American Broadcasting Cos., Inc. v. Wolf,* 52 N.Y.2d 394, 438 N.Y.S.2d 482, 420 N.E.2d 363, 367 (1981)). Further, the court reasoned that an injunction could issue only if defendant were "an athlete of exceptional talent." *Id.* at 294. Based on uncontroverted evidence that Plaintiff had been ranked highly by two separate boxing organizations, the *Arias* court determined that defendant's services were "unique and extraordinary." *Id.* at 292. Finding that irreparable harm could result if the scheduled fight were to occur, the court entered the requested injunction, barring defendant from participating in that bout. *Id.* at 295.

### c. Defendant Letterlough's Performance Under the Contract is Irreplaceable

In the instant case, as in *Arias,* irreparable harm would be threatened in the absence of an injunction. As discussed above, the evidence demonstrates that Letterlough has risen to become a nationally ranked and reputable professional fighter. Marchio contracted for the right to be Letterlough's exclusive promoter and has at all times fulfilled his contractual obligations to Letterlough. Marchio has a protected legal interest in promoting a particular boxer, Julian Letterlough—not just any boxer, but, specifically, this unique fighter.

### 2. Irreparable Harm to Moving Party's Reputation

Potential damage to one's reputation may constitute a threat of irreparable harm. *See Opticians Ass'n of Amer. v. Independent Opticians,* 920 F.2d 187, 195 (3d Cir.1990). At least one court has found that damage to a boxing promoter's reputation can amount to an irreparable injury. *See Madison Square Garden Boxing, Inc. v. Shavers,* 434 F.Supp. 449, 452 (S.D.N.Y.1977). Upon finding that the boxer's (Shavers') talents were unique and extraordinary, the court enforced a negative covenant barring the boxer from entering into any fight in violation of his promotional agreement with Madison Square Garden:

> [T]he Garden is, to a measurable extent, irreparably injured as a viable promoter of major boxing matches were Shavers with impunity able to simply disavow a prior agreement with the Garden to take advantage of a later—made more attractive offer. The Garden's credibility could be destroyed in the eyes of boxing managers, as well as various media representatives, such as television producers, or others, who, in reliance, enter into further contracts that in fact may well represent the major source of income from the event being promoted, possibly being the difference between profit and loss for the promoter. In any event, it is beyond question that the balance of hardships is in the Garden's favor.

*Id.*

In the present case, as in *Shavers,* as a result of Letterlough's threatened breach of contract, Plaintiff faces serious damage to his reputation as a boxing promoter. As discussed above, Marchio has acquired a reputation in the closely-knit professional boxing world as Letterlough's promoter. If Letterlough is allowed to have future

bouts arranged with another promoter, Marchio will suffer irreparable injury to his reputation as a promoter, and specifically as the promoter for Letterlough's fights.

### C. *Irreparable Harm to the Non-moving Party*

Were this Court to enjoin Defendant Letterlough from freely pursuing his boxing career or engaging in bouts of his choice, he would surely suffer irreparable harm. However, a preliminary injunction which merely requires Letterlough to list Plaintiff as a promoter or co-promoter in all advertisements and publicity materials will not cause such harm to Defendant. In addition, the Court will require Marchio to post a substantial bond for each fight in which Letterlough participates, so as to protect Letterlough in case it is ultimately determined that Marchio is not entitled to the relief he is granted in this Court's Order.

### D. *The Public Interest*

The public interest would not be served by an injunction prohibiting Letterlough from entering into any boxing contest without Marchio's approval because such an injunction would effectively bar Letterlough from pursuing his chosen profession as his opportunities to fight could be curtailed virtually at Marchio's will.

On the other hand, the public interest will be served by a limited injunction requiring Letterlough to list Marchio as a co-promoter or promoter for all of his fights through the term of the promotional agreement. The legal precedents discussed above make it clear that Marchio is entitled to such injunctive relief. Moreover, the preservation of contractual rights to exclusive services is in the public interest.

### V. *Application of Law to Facts*

Fully knowledgeable of the restrictions, as a matter of law and public policy, on granting injunctions in the area of personal services, the Court nonetheless believes that Marchio has established a protected legal interest in his exclusive promoter relationship with Letterlough, and thus, his right to a limited injunction. The Court finds Marchio will truly suffer some irreparable harm if Letterlough can fight through the aegis of another promoter, without any reference to Marchio. This conduct by Letterlough would be not only in breach of the Exclusive Promotional Contract which is admittedly still in existence between Marchio and Letterlough, but would also cause Marchio to suffer some irreparable harm not easily compensable or computed in monetary damages. However, the Court finds that it cannot, under the law, the facts or public policy, enjoin Letterlough from engaging in any boxing bouts unless they are arranged by Marchio. Nor is there any evidence that would justify enjoining Marley from any activities whatsoever, in that Marley's only role viz-a-viz the parties is to act as manager for Letterlough, a role that Marley intends to continue.

Thus, the scope of the equitable relief to which Marchio is entitled under the evidence and the law is only that, insofar as Letterlough engages in boxing bouts through June 20, 2003, he shall be required to indicate, in any advertising or promotional materials, that Marchio is acting either as promoter or co-promoter.[8] There is no restriction on Letterlough entering into a promotional contract with another promoter, and there is no requirement that Letterlough actually use any services of Marchio, or that there be any contact between them. Marchio has no

---

8. As shown in Exhibit 9, Marchio was co-promoter on several of Letterlough's bouts.

Thus, he is not entitled to be listed only as sole promoter.

right to require Letterlough to use his services unless Letterlough specifically so requests and/or agrees to them. The only requirement by this Court is that, as to the aspects of publicly identifying the promoter of any such bouts, Marchio be at least identified as co-promoter.

The contract between Marchio and Letterlough also contains a clause that, if Letterlough achieves certain specific recognition as a boxer, the contract will be extended for a certain period of time. At the hearing, the parties did not introduce any evidence as to whether Letterlough had achieved such status. Plaintiff has submitted to the Court supplemental material which purports to assert that Letterlough did receive the status which would cause the contract to be extended. However, this material has not been made part of the record in any acceptable evidentiary sense.[9]

The Court need not wrestle at this time with the issue of the extension of the contract, but will grant leave to the Plaintiff, as June 20, 2003 approaches, to seek further relief if the facts so warrant. At any continued hearing, Defendants will also be able to present additional evidence on unclean hands and the ongoing relationship between the parties.

The Court has also considered whether to enter any equitable relief in the nature of an escrow account to preserve some portion of the gross revenue received so as to protect Marchio's claims for breach of contract. The Court declines to enter such relief at this time. Whether Letterlough will fight in the future, and what will be the nature and extent of those revenues, is at the moment speculative. The Court urges the parties to discuss escrowing certain portions of any such revenues so that there will not be any dispute over

what happened to the revenues between now and a final hearing.

In order to protect Letterlough's financial interests in bouts in which he has designated Marchio as promoter or co-promoter pending trial, the Court will require Marchio to post bond in the amount of $25,000, as a condition of the issuance of an injunction; and upon the effective date of each and every contract for Letterlough to fight, Marchio shall post an additional bond of $25,000.

An appropriate Order follows.

### *ORDER*

AND NOW, this 27th day of December, 2002, it is hereby ORDERED as follows:

1. The Temporary Restraining Order entered by stipulation on November 21, 2002, is VACATED;

2. Plaintiff's Motion for Preliminary Injunctive Relief, after hearing, is GRANTED IN PART AND DENIED IN PART as follows:

A. The relief that Plaintiff has requested, that Defendant Julian Letterlough be enjoined from entering into any promotional contract with another promoter, and be enjoined from engaging in any professional boxing fights unless Plaintiff is the promoter, is DENIED;

B. Defendant, Julian Letterlough, from now until June 20, 2003, is enjoined from engaging in professional fights unless, as to each bout or fight in which he intends to participate, all those advertising or promotional materials, which customarily identify the promoter of the bout or fight, identify Plaintiff either as promoter or co-promoter.

---

9. Defendant Marley has also submitted additional material to the Court, by letter, which he contends is evidence of unclean hands, but likewise, he has not made this material part of the evidentiary record.

C. Letterlough shall provide prompt written notice to Plaintiff as to each and every contract which Letterlough signs for a boxing bout. Thereafter, Plaintiff shall immediately notify Letterlough in writing if he does not wish to be listed with respect to any particular bout.

3. Marchio shall post a bond of $25,000 as a condition of the issuance of this injunction. Within ten (10) days of the effective date of each and every contract, by which Letterlough agrees to fight, unless Marchio declines to be listed in a promotional capacity, he shall post an additional bond of $25,000.

4. Plaintiff's request for a preliminary injunction against defendant Marley is DENIED.